INDUSTRIAL SIDERÚRGICA, INC., demandante y recurrida, *v.* THYSSEN STEEL CARIBBEAN, INC., FLORIDA STEEL CORPORATION; B. S. LIVINGSTON & CO., INC., demandadas y peticionaria la segunda.

*Número:* O-82-795          *Resuelto:* 30 de junio de 1983

*Carlos Colón Marchand*, abogado de la peticionaria Florida Steel Corporation; *Julio M. Rodríguez*, de *Fiddler, González & Rodríguez*, y *Orlin P. Goble*, abogados de Thyssen Steel Caribbean, Inc.; *Zadette Bajandas*, de *O'Neill & Borges*, abogada de B. S. Livingston & Co.; *Héctor Saldaña Egozcue*, de *Ortiz Murias & Saldaña*, abogado de la recurrida Industrial Siderúrgica, Inc.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Florida Steel Corporation recurre ante nos de resolución del Tribunal Superior que denegó su solicitud para que se desestime demanda instada en su contra en que se reclama por alegados daños basados en violación de las disposiciones antimonopolísticas de la Ley de Monopolios. Aduce falta de jurisdicción sobre su persona por ser una corporación foránea a la que no alcanza el Art. 13B de dicha ley ni la Regla 4.7 de Procedimiento Civil. Resolvemos que, independientemente del citado Art. 13B, la demandante ha demostrado ante nos que existe prueba que tiende a establecer que Florida Steel efectúa transacciones de negocios en Puerto Rico y hay, por tanto, base para ejercer jurisdicción sobre ella conforme a la Regla 4.7(a)(1) de Procedimiento Civil, sin que se violenten las disposiciones constitucionales aplicables sobre debido procedimiento de ley.

I

La demanda objeto de este caso alega que Industrial Siderúrgica, Inc., corporación organizada y existente bajo las leyes de Puerto Rico, se dedica a la venta de acero de refuerzo dentro y fuera de Puerto Rico; que las demandadas Florida Steel Corp., y B. S. Livingston & Co., Inc. son el fabricante y el intermediario, respectivamente, de acero de refuerzo que suplen a la otra demandada, Thyssen Steel

Caribbean, Inc., corporación doméstica; que ésta a su vez vende en y fuera de Puerto Rico; que mediante concesiones especiales hechas por Florida Steel y Livingston a Thyssen, y mediante acuerdos y combinaciones entre éstas, conspiraron contra la demandante premeditada y maliciosamente para destruir su competencia y eliminarla del mercado local, en violación de la Ley Núm. 77 de 25 de junio de 1964 (10 L.P.R.A. secs. 257–276); y que tales actuaciones han causado daños a la demandante, que se estiman en cinco millones de dólares.

Florida Steel solicitó desestimación de la demanda por alegada falta de jurisdicción *in personam*. Adujo que está incorporada en el estado de Florida, donde tiene sus oficinas principales; que posee centros manufactureros en Florida, Carolina del Norte, Tennessee, Georgia, Luisiana y Carolina del Sur, pero que no tiene oficinas, fábricas, bienes, empleados, agentes o vendedores en Puerto Rico ni ha realizado transacciones de negocio en esta jurisdicción. Negó, además, que se hubiese aprovechado de cualquier privilegio en nuestro foro o que de otro modo se hubiese sometido a la jurisdicción de nuestros tribunales. Acompañó su solicitud con declaración jurada de su vicepresidente, expositiva de dicha circunstancia.

Por su parte, Industrial Siderúrgica replicó que independientemente de lo que disponga la Regla 4.7 de Procedimiento Civil (referente a las circunstancias en que nuestros tribunales pueden ejercer jurisdicción sobre demandados no domiciliados ni residentes en Puerto Rico), la Ley de Monopolios dispone en su Art. 13B que los tribunales de Puerto Rico pueden ejercer jurisdicción sobre cualquier persona que haya violado algunas de sus disposiciones y que, además, perciba un ingreso sustancial de alguna actividad económica en Puerto Rico.

En su moción ante el tribunal de instancia, Industrial Siderúrgica alegó que del descubrimiento de prueba respecto a Livingston surgía que Florida Steel conoce que su producto

está destinado para Puerto Rico, ya que Livingston no toma posesión del acero en ningún momento, sino que Florida Steel lo entrega directamente a Thyssen en Jacksonville, Florida, para embarcar directamente a la Isla. La demandante alegó que en el último año y medio se hicieron en esta forma diez embarques de acero. Adujo, además, que Florida Steel en ocasiones le vendió directamente a la demandante lingotes de acero para su elaboración y que las ventas de Florida Steel en Puerto Rico han sido sustanciales. Por tal razón, concluyó, Florida Steel lleva a cabo transacciones de negocio en Puerto Rico al punto que la sujeta a la jurisdicción de nuestros tribunales.

El tribunal de instancia sumariamente declaró sin lugar la moción de desestimación de Florida Steel, sin celebración de vista y sin oportunidad de que se consideraran los diversos aspectos planteados por las contenciones de las partes. A petición de Florida Steel expedimos auto de *certiorari* para considerar el planteamiento constitucional sobre jurisdicción *in personam.*

Aparte de los argumentos vertidos por la recurrida Industrial Siderúrgica en oposición a la solicitud de desestimación, ha producido ante nos, en su abono, elementos de prueba obtenidos en el trámite de descubrimiento de prueba que no tuvo oportunidad de presentar ante el tribunal de instancia. De ordinario no los consideraríamos. Pero no se trata en esta etapa de los procedimientos de determinar sobre su admisibilidad y valor probatorio, asunto que competerá en su día al tribunal de instancia. Se trata de tomar razón de que se cuenta con determinada prueba que de ser cierta daría suficiente base para el ejercicio de jurisdicción sobre la persona de la demandada y aquí peticionaria Florida Steel. Sobre este aspecto nos ocuparemos más adelante.

Dicha prueba tiende a demostrar que en 1977 Florida Steel remitió a Livingston una carta-contrato mediante la cual aquélla le confirma a ésta que todas sus ventas de acero de refuerzo para Puerto Rico serán hechas exclusi-

vamente a Livingston. A cambio de esto Livingston compraría todo el acero doméstico (producido en Estados Unidos) a Florida Steel. No obstante, Florida Steel se reservaba el derecho de venderle acero a la demandante Industrial Siderúrgica. El propósito de este acuerdo fue "establecer y mantener una relación comercial a largo plazo entre ambas partes para beneficio mutuo". (¹)

La deposición tomada a un oficial de Livingston tiende a demostrar que el acuerdo aún está vigente y que todo el acero vendido por Livingston lo ha suplido Florida Steel. Además, Florida Steel no entrega el acero a Livingston sino a Thyssen. Por otro lado, Florida Steel marca el acero que

---

(¹) El texto de la carta es el siguiente:

"April 6, 1977

B. S. Livingston & Co., Inc.
60 East 42nd Street
New York, N.Y. 10017

Attention: Mr. Alfred Scnog

Gentlemen:

This is to confirm that Florida Steel Corporation has agreed that its sales of reinforcing steel bars into Puerto Rico will be exclusively to B. S. Livingston & Co., Inc., except as noted under "EXCEPTION" below. It is understood that in consideration of this exclusive sales agreement B. S. Livingston & Co., Inc., and/or any of its agents will restrict their purchase of domestically produced reinforcing steel bars for consumption in Puerto Rico to Florida Steel Corporation.

The intent of this agreement is to establish and maintain a long-range business relationship in the Puerto Rican market that will be beneficial to both parties. However, should this intent not be realized, this agreement may be terminated by either party within thirty (30) days upon receipt of written notice.

EXCEPTION:   Florida Steel Corporation reserves the right to sell reinforcing steel bars directly to Industrial Siderurgica, Inc., Bayamon, Puerto Rico, without being in violation of this agreement.

We are looking forward to working with you on your Puerto Rico requirements and sincerely believe that it should prove to be a profitable relationship for both of our firms.

Very truly yours,

FLORIDA STEEL CORPORATION

E. L. Wolf

ELW:ah."

envía a Puerto Rico con una etiqueta de metal que expresa que dicho acero está destinado para San Juan. [2]

Más aún, cuando se negocia el precio del acero que Livingston compra para revender a Thyssen, participan oficiales de las tres compañías. Las reuniones generalmente son cada tres meses y se celebran en las ciudades de Tampa, Nueva York y San Juan.

En 1980 Florida Steel hizo cinco embarques de acero a Puerto Rico, en 1981 cuatro, y otros tantos en 1982. Los embarques anuales representan 23,605 toneladas métricas de acero de refuerzo para Puerto Rico en 1980; 24,403 en 1981; y 25,592 en 1982. El valor de tales embarques anuales ascendió a casi siete millones de dólares en 1980; casi seis millones y medio en 1981; y casi seis millones en 1982. En los tres años, Florida Steel ha recibido por las ventas de su acero en Puerto Rico más de diecinueve millones de dólares. Además, en las facturas de Florida Steel a Livingston se hace constar que la mercancía fue enviada a Thyssen en San Juan, Puerto Rico.

Con estas circunstancias es que debemos adjudicar los méritos del incidente procesal ante nuestra consideración.

## II

Para resolver la presente controversia es necesario determinar previamente si existe algún estatuto o regla que autorice a los tribunales de Puerto Rico a asumir jurisdicción *in personam* sobre la demandada peticionaria y, de existir, si el ejercicio de tal jurisdicción es compatible con la cláusula de debido procedimiento de ley. [3]

---

[2] La etiqueta dice:

"BSL/Order No. 1252 San Juan, Made in U.S.A., No. of Pieces #1/up total gross and net weight."

[3] Ver escolio núm. 6, *infra*.

—A—

■ Nuestro estatuto general de largo alcance aparece ubicado en la Regla 4.7 de Procedimiento Civil. No obstante, la demandante ha invocado una ley especial que contiene una disposición particular de largo alcance aplicable a los casos que surjan al amparo de sus disposiciones. La Ley de Monopolios de Puerto Rico, que es la ley sobre la cual la demandante ha fundado su reclamación, establece lo siguiente:

Art. 13B. *Jurisdicción adicional*

En adición a las disposiciones sobre emplazamiento prescritas por las Reglas de Procedimiento Civil para el Tribunal General de Justicia, podrá adquirirse jurisdicción sobre un demandado, ya sea persona natural o jurídica, si éste, directa o indirectamente, comete un acto en violación de este Capítulo, y además, percibe un ingreso sustancial de bienes usados o consumidos o servicios prestados en Puerto Rico y/o recibe ingresos sustanciales dentro del contexto de la economía de Puerto Rico o de algún impacto o efecto en un mercado local específico.

■ Bajo esta disposición deben cumplirse ambos requisitos, el de la conducta que constituye una infracción a la ley y el del beneficio sustancial proveniente de nuestro mercado. Hay base en la prueba ofrecida para establecer prima facie el segundo requisito, pues tiende a demostrar que Florida Steel obtuvo más de diecinueve millones de dólares de ingresos, en tres años, de ventas a Thyssen en Puerto Rico. Éste es sin duda un ingreso sustancial. No hay, por otro lado, indicio alguno de prueba sobre el primer requisito. La mera alegación de que se han cometido actos en violación de la Ley de Monopolios no basta. Véase, sobre el particular, *State of West Virginia* v. *Morton International, Inc.*, 264 F.Supp. 689, 695 (1967). De permitirse que la mera alegación sobre violación de nuestra ley de monopolios por una persona o corporación foránea sea suficiente para conferir jurisdicción *in personam* a este foro se frustraría el propósito contenido en la cláusula de debido procedimiento

de ley de evitar que un demandado tenga que defenderse de pleitos en un foro distante e inconveniente con el cual no tiene nexo, relación o contactos.

—B—

■ Señalamos en la parte I de esta opinión que el tribunal de instancia decidió la moción de desestimación de Florida Steel sin celebrar vista, y sin que las partes tuvieran oportunidad de demostrar la validez de sus planteamientos. De hecho, el tribunal descansó en la suficiencia de las alegaciones para establecer la jurisdicción sobre la persona de Florida Steel. Al así hacerlo, incidió. Cuando menos debió requerir que la demandante demostrara que cuenta con prueba suficiente para establecer los requisitos necesarios para conferir jurisdicción *in personam* sobre la demandada y así garantizar su derecho a un debido procedimiento de ley. El error es, sin embargo, inconsecuente, porque el requisito ha quedado cumplido ante nos, cuando menos en lo que respecta a la aplicación de la Regla 4.7 de Procedimiento Civil. En lo aquí pertinente, dicha regla dispone:

> (a) Cuando la persona a ser emplazada no tuviere su domicilio en Puerto Rico, el Tribunal General de Justicia de Puerto Rico tendrá jurisdicción personal sobre dicha persona, como si se tratare de un domiciliado del Estado Libre Asociado de Puerto Rico, si el pleito o reclamación surgiere como resultado de dicha persona:
>
> (1) Haber efectuado por sí o por su agente, transacciones de negocio dentro de Puerto Rico . . . .

El término "transacciones de negocio" fue interpretado en otro contexto en *Medina* v. *Tribunal Superior*, 104 D.P.R. 346 (1975). [4] No habíamos tenido oportunidad de interpretarlo en el contexto en que en este caso se presenta.

---

[4] Allí dijimos: "El término 'transacción', según traducido del inglés, 'transaction', significa gestión o trámite. . . . Usualmente dicho término se usa *en el idioma inglés* para indicar que se ha llevado a cabo un acto o se ha hecho una gestión sobre algo." (Énfasis suplido.) Págs. 354-355. En español "transacción" sólo tiene

Bajo la Ley Clayton, Sec. 12 (15 U.S.C. sec. 22), ley antimonopolística federal (que utiliza el término "transacción de negocio", similar al de nuestra Regla 4.7(a)(1)), se ha rechazado la teoría de la conspiración como constitutiva de las "transacciones de negocio" requeridas para fines de competencia (*venue*). Véase, *Occidental Petroleum Corp.* v. *Buttes Gas & Oil Co.*, 331 F.Supp. 92, 96–97 (1971), confirmado 461 F.2d 1261 (1972), *cert.* denegado 409 U.S. 950 (1972). Se ha resuelto que las meras alegaciones en el sentido de que el demandado extranjero ha conspirado con otro demandado de la jurisdicción para incurrir en prácticas antimonopolísticas ilícitas no proveen, en ausencia de contactos mínimos, una base suficiente para ejercer la jurisdicción del foro local. *E.g.*, *Weinstein* v. *Norman M. Morris Corp.*, 432 F.Supp. 337 (1977); *Bertha Building Corp.* v. *National Theatres Corp.*, 248 F.2d 833 (1957).

■ De modo similar llegamos hoy a la misma conclusión: conspirar para violar la Ley de Monopolios de Puerto Rico, sin más, no es efectuar gestiones de negocio de conformidad con la Regla 4.7(a)(1). El debido procedimiento de ley exige algo más.

■ No obstante, el criterio de la Regla 4.7(a)(1) respecto a si una corporación está llevando a cabo gestiones de negocio dentro del foro local es un criterio práctico, no técnico, mercantil. *Cf. United States* v. *Scophony Corp.*, 333 U.S. 795, 810 (1948).

■ Aunque su texto no lo indica, no es necesario que las gestiones de negocio las realice el demandado directamente por sí o a través de agente. *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 295 (1980). Pueden ser hechas indirectamente a través de terceras personas sin que sea indispensable que exista entre éstas y el demandado

la acepción que le da el Código Civil en su Art. 1709. A. Cintrón García, *Del Lenguaje entre Abogados*, 36 Rev. C. Abo. P.R. 1033 (1975). Pero véase, *Pueblo* v. *Braun*, 105 D.P.R. 890, 898 n. 5 (1977) (Irizarry Yunqué, J., opinión concurrente).

foráneo la relación que pueda crear un contrato de agencia. La relación indirecta entre el no residente y las terceras personas es suficiente para satisfacer el criterio de la regla cuando, como en este caso, éstas son meros eslabones en la concatenación del trámite mercantil deliberadamente preparado o conscientemente aprovechado por el ausente para obtener un beneficio económico de nuestro foro. Esta interpretación es afín con la tendencia moderna "que es la de ampliar la jurisdicción de los tribunales estatales sobre personas no residentes del foro", *Medina* v. *Tribunal Superior*, supra, pág. 355, hasta donde la Constitución lo permita.[5]

### III

La cláusula de debido procedimiento de ley de la Constitución de Estados Unidos limita el poder de los Estados y Puerto Rico para dictar sentencias contra personas no residentes. *Kulko* v. *California Superior Court*, 436 U.S. 84 (1978). Cuando se dicta una sentencia en violación de dicha cláusula, la misma no es merecedora de entera fe y crédito

---

[5] Al interpretar nuestro estatuto de largo alcance, la Corte de Apelaciones de Estados Unidos para el Primer Circuito ha expresado que la Regla 4.7 de Procedimiento Civil pretende extender el ejercicio de la jurisdicción *in personam* del Estado Libre Asociado de Puerto Rico hasta el máximo constitucionalmente permisible. *Com. of Puerto Rico* v. *SS Zoe Colocotroni*, 628 F.2d 652, 668 (1980), *cert.* denegado 450 U.S. 912 (1981).

Debemos aclarar, sin embargo, que un acto afirmativo que desde el punto de vista constitucional represente un contacto mínimo entre un ausente y nuestro foro no es suficiente por sí solo para autorizar a nuestros tribunales a ejercer su jurisdicción si dicho acto no puede ser enmarcado en cualesquiera de las circunstancias que describe la Regla 4.7 de Procedimiento Civil. Para que fuera de otro modo, sería menester adoptar un estatuto como el de California, que dice:

"Un tribunal de este Estado puede ejercer su jurisdicción sobre cualquier base que no sea incompatible con la Constitución de este Estado o de Estados Unidos." Cal. Civ. Proc. Code Sec. 410.10 (West 1973); véase, M. Green, *Jurisdictional Reform in California*, 21 Hastings L.J. 1219 (1970).

Esta norma, por supuesto, sería mucho más difícil de administrar, y mientras la Regla 4.7 no se enmiende en tal sentido, la encuesta inicial debe ser siempre determinar si la conducta imputada al demandado ausente está comprendida en sus disposiciones. Ver, *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 289-290 (1980).

en ningún otro Estado. *Pennoyer* v. *Neff*, 95 U.S. 714 (1877). El debido procedimiento de ley requiere que se notifique adecuadamente al demandado la reclamación que haya en su contra y que, además, se le brinde la oportunidad de ser oído, *Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306 (1950), antes de que se adjudiquen definitivamente sus derechos en la acción. *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600 (1974). El debido procedimiento de ley requiere, además, que el demandado esté sujeto a la jurisdicción *in personam* del tribunal estatal o local. *Internat. Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). En el caso ante nosotros no se cuestiona que el emplazamiento de la demandada recurrente haya sido inadecuado, sino que solo se cuestiona la facultad de los tribunales de Puerto Rico para ejercer su jurisdicción sobre su persona.

El Tribunal Supremo de Estados Unidos ha resuelto reiteradamente que el debido proceso de ley sólo requiere para someter al demandado a una sentencia *in personam*, si no está presente en la jurisdicción, que él tenga en ella ciertos contactos mínimos de forma tal que el pleito no quebrante "las nociones tradicionales del juego limpio y justicia sustancial". *Internat. Shoe Co.* v. *Washington*, supra, pág. 316; *World-Wide Volkswagen Corp.* v. *Woodson*, supra, pág. 291.

En la más reciente reformulación de su doctrina el Tribunal expresa en *World-Wide Volkswagen Corp.*, supra, que la doctrina de contactos mínimos sirve dos propósitos relacionados pero distinguibles: de un lado proteger al demandado de la carga que supone litigar en un foro distante o inconveniente; y, de otro lado, asegurar que los Estados, por medio de sus tribunales, no habrán de rebasar los límites que recaen sobre ellos por su condición de soberanos iguales entre sí en un sistema federal de gobierno. (⁶) Véase,

---

(⁶) No es necesario en este momento ubicar a Puerto Rico en el esquema federativo norteamericano. A los fines de la presente discusión, presumiremos que todas las limitaciones que impone la cláusula de debido procedimiento a los Esta-

A. Kamp, *Beyond Minimum Contacts: The Supreme Court's New Jurisdictional Theory*, 15 Ga. L. Rev. 19 (1980). Estas dos funciones están imbuidas en los criterios de razonabilidad (*reasonableness*) y justeza (*fairness*). Así, el contacto del demandado con el foro debe ser tal que no hiera nociones tradicionales de juego limpio y justicia sustancial. Además, la relación entre el demandado y el foro debe ser de tal naturaleza que sea razonable requerir a la corporación que se defienda de la acción particular incoada en dicho foro.

Según *World-Wide Volkswagen Corp.*, supra, pág. 292, "[i]mplícito en este énfasis de razonabilidad está el entendimiento de que la carga [del pleito] sobre el demandado, aunque siempre de primordial importancia, será considerada en casos apropiados, teniéndose en cuenta otros factores pertinentes, incluso el interés del foro local en adjudicar el litigio; el interés del demandante en obtener un remedio conveniente y efectivo, al menos cuando ese interés no está protegido adecuadamente por la facultad del demandante de escoger el foro; el interés del sistema judicial interestatal en lograr la más eficiente resolución de las controversias; y el interés compartido de los distintos estados en promover fundamentales *policies* sociales sustantivos". (Citas omitidas; traducción nuestra.)

A pesar de su función de asegurar que una persona no sea obligada a litigar en un foro inconveniente, la cláusula de debido procedimiento de ley ha sido aplicada flexiblemente desde *Pennoyer*, supra. El análisis de las decisiones del Tribunal Supremo de Estados Unidos desde entonces revela las ajustadas interpretaciones de sus principios a unas circunstancias en continua evolución.([7]) Véase, *e.g.*,

---

dos son igualmente aplicables a Puerto Rico, aun cuando éste tiene un *status* único y distinto. *Cordova & Simonpietri Ins.* v. *Chase Manhattan Bank*, 649 F.2d 36, 39–42 (1st Cir. 1981), citadas específicamente estas páginas con aprobación en *Rodríguez* v. *Popular Democratic Party*, 457 U.S. 1, 8 (1982).

([7]) Véase el recuento que sobre el particular se hace en *Medina* v. *Tribunal Superior*, 104 D.P.R. 346 (1975), especialmente las páginas 348 a 354.

Note, *"Doing Business": Defining State Control over Foreign Corporations*, 32 Vand. L. Rev. 1105 (1979). Todas las reglas de excepción que hubo de tejer la jurisprudencia por causa de la rigidez excesiva de *Pennoyer*, supra, al puntualizar el elemento de presencia física del demandado en los límites territoriales como base para el ejercicio de jurisdicción en acciones personales, llegaron a deshacerse finalmente con el correr de los años. Las teorías de la "presencia física" primero, y del "consentimiento" después, utilizadas por las cortes para ajustar la ficción corporativa a una economía cambiante y, asimismo, ajustar la nueva tecnología al mundo de las comunicaciones y la transportación que pronto alteraron las relaciones de tiempo y espacio, llegaron a su ocaso en *Internat. Shoe Co.*, supra.

Lo que sobrevivió a la reformulación de la doctrina en *Internat. Shoe Co.*, supra, *i.e.*, la jurisdicción fundada en el embargo de bienes del demandado ausente en la demarcación territorial del foro en cuestión, también vino a extinguirse en *Shaffer* v. *Heitner*, 433 U.S. 186 (1977), donde se resolvió que el ejercicio de jurisdicción por parte de un tribunal estatal se regirá por la doctrina de los contactos mínimos y no a base de distinciones respecto a la naturaleza de la acción, bien sea *in personam, in rem* o *quasi in rem.* [8]

Es evidente, pues, que el énfasis ya no es en la presencia física ni en el consentimiento para ser demandado y, mucho menos, en la tenencia de bienes en la jurisdicción del Estado en que se insta la acción. Ver, Kamp, *op. cit.*; y *Constitutional Law* (The Supreme Court, 1979 Term), 94 Harv. L. Rev. 75, 107–116 (1980). El propio tribunal reconoce que "hoy día muchas transacciones comerciales tocan dos o más Estados y pueden involucrar personas separadas por todo el continente. Con la creciente nacionalización del comercio se ha experimentado un incremento en la cantidad de negocios

---

[8] Si alguna duda quedaba, ésta se disipó con el posterior caso de *Rush* v. *Savchuk*, 444 U.S. 320 (1980).

que se realizan a través de las fronteras de los Estados. Al mismo tiempo los medios de transportación y comunicación modernos han hecho menos gravoso para un demandado el defenderse en un Estado donde lleva a cabo actividades económicas". *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 222–223 (1957).

No obstante, el tribunal ha expresado también que "es un error suponer que esta tendencia vaya dirigida a la eventual abolición de todas las restricciones sobre la jurisdicción personal de los tribunales estatales. [Cita omitida.] Tales restricciones son más que una garantía de inmunidad contra litigación distante o inconveniente. Son una consecuencia de los límites territoriales en el poder de los respectivos Estados". (Traducción nuestra.) *Hanson* v. *Denckla*, 357 U.S. 235, 251 (1958).

Así, la laxitud con que en los años recientes el Tribunal Supremo de Estados Unidos ha enfrentado los diversos problemas de jurisdicción no puede servir de base para sostener que en la actualidad las demarcaciones territoriales de los Estados sean impertinentes y que, frente a una economía nacionalizada, éstos pueden dictar sentencias vinculantes y obligatorias sobre personas con las cuales el Estado no tiene ningún contacto o relación. Mas, por el contrario, si el demandado no residente ni domiciliado posee los contactos mínimos que la jurisprudencia ha definido desde *Internat. Shoe Co.*, supra, entonces es vinculante la sentencia que pueda dictarse, y la misma constituiría un ejercicio válido de la soberanía del Estado o, en su caso, de Puerto Rico.

■ Las propias decisiones de este Tribunal han incorporado los anteriores principios. Así, hemos rehusado ejercer nuestra jurisdicción en un caso en que el demandante no pudo establecer satisfactoriamente el contacto mínimo necesario entre el demandado y nuestro foro. *A. H. Thomas, Co.* v. *Tribunal Superior*, 98 D.P.R. 883 (1970). En este caso, siguiendo decisiones del Tribunal Supremo federal, dejamos establecido que aun bajo la doctrina de los

contactos mínimos "se requiere que el contacto dentro de la jurisdicción resulte de un *acto afirmativo* de la parte demandada". (Énfasis suplido.) Pág. 889. Allí resumimos las tres reglas que se han elaborado para determinar la jurisdicción *in personam* sobre un no residente ni domiciliado, del siguiente modo (pág. 890):

(1) El demandado no residente debe realizar algún acto o consumar alguna transacción dentro del foro. No es necesario que la actividad se efectúe físicamente dentro del foro; el acto o transacción puede realizarse por correo. Un solo acto o transacción basta si sus efectos en el foro son suficientemente sustanciales para cualificar bajo la regla tercera.

(2) La causa de acción debe surgir o resultar de las actividades del demandado dentro del foro. Es concebible que la causa de acción precisa se plasme fuera del foro, pero [que] debido a las actividades del demandado en el foro aún exista el "contacto mínimo sustancial" que es necesario.

(3) Habiéndose establecido bajo las reglas precedentes un contacto mínimo entre el demandado y el foro, la asunción de jurisdicción fundada en ese contacto debe ser compatible con los principios de "trato imparcial" y "justicia sustancial" del debido procedimiento de ley. Si se satisface esta norma, existe un "contacto mínimo sustancial" entre el foro y el demandado. La razonabilidad de someter al demandado a la jurisdicción se determina frecuentemente por las normas análogas a las de *forum non conveniens*.

Posteriormente, en *Medina* v. *Tribunal Superior*, supra, tuvimos nuevamente la ocasión de reiterar los anteriores principios y en virtud de ello asumimos jurisdicción sobre un demandado residente de Miami, Florida, al determinar que efectivamente había realizado "transacciones de negocio" en Puerto Rico de calidad satisfactoria a la cláusula de debido procedimiento de ley. [9]

---

[9] En *Marrero Reyes* v. *García Ramírez*, 105 D.P.R. 90 (1976), sostuvimos el ejercicio de la jurisdicción de nuestros tribunales en un caso de custodia de una menor que residía y estaba domiciliada junto a sus abuelos, los demandados, fuera de Puerto Rico. Ejercimos nuestra jurisdicción a base de que la madre de la menor, es decir, la demandante, era residente de Puerto Rico. No obstante, esta

En vista de lo anterior, pasemos a considerar los méritos del presente recurso.

## V

Para determinar si el ejercicio de jurisdicción de parte de un tribunal estatal es compatible con el debido procedimiento de ley, la pesquisa debe estar orientada hacia la relación existente entre el demandado, el foro y el litigio. *Rush* v. *Savchuk*, 444 U.S. 320, 327 (1980); *Shaffer* v. *Heitner*, supra, pág. 204.

Es un hecho no controvertido que la demandada Florida Steel no tiene oficinas, empleados o agentes en el Estado Libre Asociado. El único contacto o relación que tiene con nuestro foro es que, según la prueba propuesta, embarca regular y consecuentemente mercancía destinada de modo expreso a San Juan. No se trata de una gestión de negocio aislada ni fortuita.

La carta-contrato suscrita en 1977 con Livingston sugiere que su actividad económica ha estado decididamente calculada para cubrir el mercado siderúrgico de Puerto Rico. En consecuencia, la demandada no ha tenido reparo en marcar la mercancía como destinada para el mercado local. Lo anterior nos exime de considerar la teoría de la previsibilidad, según discutida en *World-Wide Volkswagen Corp.*, supra; es decir, determinar si era previsible para Florida Steel que sus productos llegasen a Puerto Rico. Se ha ofrecido prueba indicativa de que la demandada estaba efectivamente al tanto de que su producto ocupaba una parte significativa del mercado local. Las ventas de Florida Steel a Livingston y la reventa de ésta a Thyssen no parecen ser episodios aislados ni "la actividad unilateral de aquellos que reclaman alguna relación con el demandado no residente". *Hanson* v. *Denckla*, supra, pág. 253. Se trata de

---

decisión debe reexaminarse a la luz de lo resuelto posteriormente por el Tribunal Supremo de Estados Unidos en *Kulko* v. *California Superior Court*, 436 U.S. 84 (1978), y por nuestra propia decisión en *Perron* v. *Corretjer*, 113 D.P.R. 593 (1982).

actos afirmativos con una repercusión local importante. *World-Wide Volkswagen Corp.*, supra, es claro en sus términos: "El Estado del foro no excede sus poderes a tenor con la cláusula de debido procedimiento si ejerce jurisdicción personal sobre una corporación que deja ir sus productos por la corriente de comercio con la expectativa de que los mismos serán adquiridos por los consumidores de dicho Estado." Págs. 297–298.

El caso de *O.S.C. Corporation* v. *Toshiba America, Inc.*, 491 F.2d 1064 (1974), citado por la demandada peticionaria, es distinto al de autos. Allá se determinó que los tribunales de California no podían asumir jurisdicción sobre una corporación japonesa en un pleito antimonopolístico en que la corporación de California compraba a una corporación de Nueva York lo que la corporación japonesa fabricaba. En dicho caso la demandante no pudo establecer, según alegaba, que la corporación japonesa despachaba sus embarques directamente a la demandante en California. En el presente caso se ofrece prueba que demuestra que Florida Steel hace los embarques directamente a Thyssen, que es una corporación nativa, conoce que esa es la realidad y marca sus productos con la indicación de que San Juan es el lugar de su destino. Florida Steel convino también en establecer relaciones comerciales estables en nuestro mercado.

Debemos tener presente que, de todos modos, el debido proceso de ley no requiere que la actividad comercial sea realizada por el demandado ausente directamente. *World-Wide Volkswagen Corp.*, supra, pág. 295. El contacto mínimo que exige la cláusula constitucional puede suscitarse por medio de intermediarios.

Finalmente, es evidente la relación que existe entre la demandada y el litigio. Las gestiones de negocios realizadas por la demandada peticionaria están íntimamente ligadas al pleito incoado por la demandante. Éste versa precisamente sobre el efecto que tienen las ventas y los precios de los productos en el negocio de la demandante.

Habiéndose acogido la demandada al beneficio de hacer negocios en Puerto Rico, no contraría la cláusula de debido procedimiento de ley el que el Tribunal General de Justicia de Puerto Rico ejerza jurisdicción sobre su persona en el pleito ante nuestra consideración.

Por los fundamentos anteriormente expuestos, *se confirmará la resolución recurrida.*

El Juez Presidente Señor Trías Monge no intervino. El Juez Asociado Señor Negrón García se inhibió.