**SERGIO ESTRADA RIVERA AUTO CORPORATION, Plaintiff,**

v.

**Sang J. KIM and Helen Kim, Defendants.**

**Civ. No. 88–1628 HL.**

United States District Court, D. Puerto Rico.

June 16, 1989.

**970**

Lydia Lizarribar, San Juan, P.R., for plaintiff.

Carolyn Boren, Woods, Rosenbaum, Luckeroth & Perez González, Hato Rey, P.R., Stephen N. Dratch (pro hac vice), Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Fransblau, & Falkin, Roseland, N.J., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

The complaint in this action alleges that defendant Sang J. Kim ("Kim") and plaintiff Sergio Estrada Rivera Auto Corp., through its president, Sergio Estrada Rivera ("Estrada") agreed that Kim would negotiate on behalf of Estrada's company for franchise rights on Hyundai and Kia automobiles to be sold here in Puerto Rico. Plaintiff alleges, however, that although Kim engaged in numerous planning sessions here in Puerto Rico, negotiated and networked in the Far East, accepted reimbursement from plaintiff for expenses, and took "front" money from plaintiff for the franchises in the amount of hundreds of thousands of dollars, Kim failed to secure those franchise rights, and has since refused to return any of the money advanced to him.

### I. MOTION TO DISMISS

The defendants, Kim and his wife, Helen Kim, have moved to dismiss the action against them on the ground that this Court does not have personal jurisdiction over them. Kim has submitted a sworn affidavit in which he states that he does not conduct any business in the Commonwealth of Puerto Rico, that he has only been to Puerto Rico "on two or three occasions at the specific request of the plaintiff," that his wife, Helen Kim, has been to Puerto Rico only once, for a short vacation, and that she has never entered into any business relationship or discussions with the plaintiff.

Defendants' motion to dismiss and memorandum of law contain similar allegations. Both documents, emphatic in tone, state that Kim does not conduct any business in Puerto Rico, does not solicit business in Puerto Rico, and does not avail himself of the privilege of conducting activities in Puerto Rico. Motion to Dismiss at 3. At one point, the motion unequivocally states: "[Kim] did not solicit business in the forum, nor did he 'transact business' in the forum." *Id.* at 7. Further on, the motion suggests that the only business transactions "which could remotely serve to link

[Kim] to Puerto Rico" was the "use of wire communications to fax a letter," and that such "transactions by mail" are insufficient to confer jurisdiction. *Id.* at 9–10. The memorandum of law explains that Kim had been to Puerto Rico on only two occasions, the first time for a family vacation, and the second "to discuss some matters with Sergio representatives." Memorandum of Law at 2. It continues: "[t]he facts are clear that [Kim] engaged in no business whatsoever in the Commonwealth of Puerto Rico on his own behalf or for his own personal benefit." *Id.*

▮▮ The Due Process Clause of the Fourteenth Amendment provides the outer limit on a court's exercise of personal jurisdiction over a non-resident defendant by requiring that the defendant have "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 158–160, 90 L.Ed. 95 (1945). These contacts with the forum must be of such a nature that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In making this determination as to a defendant's minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Mindful of this outer limit imposed by the Constitution, we turn to Puerto Rico's long-arm statute. "In a diversity case, such as the present, the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute." *Mangual v. General Battery Corp.*, 710 F.2d 15 (1st Cir.1983).

Puerto Rico's long-arm statute states, in relevant part:

> Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:
>
> (1) Transacted business in Puerto Rico personally or through an agent.

P.R.Laws Ann. tit. 32, App. III R. 4.7. The Puerto Rico Supreme Court has articulated a three-part test for asserting personal jurisdiction over a non-resident defendant: (1) the non-resident defendant must do some act or consummate some transaction in Puerto Rico; (2) the cause of action must arise out of or result from the defendant's action within Puerto Rico; and (3) this act or transaction must be a "minimum contact" as defined in *International Shoe Co. v. Washington* and its progeny. *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. 864, 870 (1970).[1]

Plaintiff has the burden to prove the facts necessary to sustain this Court's exercise of personal jurisdiction over Kim and his wife, Helen Kim. *Dalmua Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 10 (1st Cir.1986); *The American Freedom Train Foundation v. Spurney*, 747 F.2d 1069, 1075 (1st Cir.1984); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir.1980); *Rubi v. Sladewski*, 641 F.Supp. 536, 539 (D.P.R.1986). Plaintiff has responded with an opposition which is, in the legal world of motions and oppositions, a bombardment of Kim's motion to dismiss. With its opposition, plaintiff has submitted the affidavit of Estrada, which is supported by prolific documentary evidence, detailing Kim's myriad of contacts with Puerto Rico.

**1.** The federal courts have held that Puerto Rico's long-arm statute extends a court's jurisdiction over a non-resident defendant to the extent allowed by the Constitution. *See, e.g., Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 668 (1st Cir.1980); *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977). The Puerto Rico Supreme Court has cautioned, however, that a contact that is considered constitutionally sufficient to exercise jurisdiction—a so-called "minimum contact"—still must abide by Rule 4.7, in that it involve, e.g., transacting business or participating in tortious acts within Puerto Rico. *Industrial Siderurgica, Inc. v. Thyssen Steel Caribbean Inc.*, 114 D.P.R. 548, 14 Official Translation 708, 721–22 n. 5 (1983).

We need only summarize them here. Plaintiff has demonstrated, through his own affidavit, copies of hotel bills, see Exhibits 1, 6, 11, 12, 14, 44, and a copy of a telex from Kim announcing an upcoming visit, see Exhibit 25, that Kim made *seven* visits to Puerto Rico from the spring of 1987 to the spring of 1988. Plaintiff has submitted a copy of a business card featuring Kim as Vice Chairman of Sergio Estrada Rivera Auto Corp., and listing two addresses for the defendant, one in New Jersey, and one in *Rio Piedras, Puerto Rico. See* Exhibit 8. Plaintiff has filed a copy of a company credit card in the name of "Dr. Sang J. Kim, Sergio Estrada Rivera." *See* Exhibit 10. Plaintiff has submitted copies of minutes from four meetings held here in Puerto Rico, in which business dealings between Kim and plaintiff are memorialized. *See* Exhibit 7, 15, 16, 26. Plaintiff has included copies of at least nineteen telexes that Kim and Helen Kim sent to plaintiff *in Puerto Rico*, all regarding business transactions between Kim and the plaintiff. *See* Exhibits 19–20, 22, 24, 28–31, 33–37, 39–43, 46. Plaintiff has submitted copies of two checks in the amounts of $30,500 and $500,000 made payable to Kim, and drawn on the Banco Central account of plaintiff. *See* Exhibits 13, 39. Kim acknowledged receiving a check for $300,000 in two telefaxes sent to Puerto Rico. *See* Exhibits 28, 30. In a telex sent to Puerto Rico, Kim also guaranteed the return of the $300,000, if the proposed venture for the Hyundai dealership was unsuccessful. *See* Exhibit 31. Another telex, sent from Kim to plaintiff in Puerto Rico, requests that plaintiff send a check in the amount of $500,000 to Helen Kim in New Jersey. *See* Exhibit 39.

With Estrada's affidavit and attached exhibits, plaintiff has illuminated the web of contacts Kim had spun in Puerto Rico throughout 1987 and part of 1988. In an age where a defendant's physical presence within a forum is no longer necessary to assert jurisdiction, *see Industrial Siderurgica v. Thyseen Steel Caribbean*, 114 D.P.R. 548, 14 Official Translation 708, 725 (1983), we have before us a defendant who made seven trips here, within a year's time, to solicit and conduct business. In an age where a single act or transaction made by mail can be used as a basis for exercising jurisdiction, *see A.H. Thomas Co. v. Superior Court*, 98 P.R.R. at 870, we have a defendant who sent at least eighteen telexes to Puerto Rico regarding business transactions ongoing between the parties.

That plaintiff's cause of action is causally related to the above described acts of Kim within Puerto Rico is indisputable. *See Industrial Siderurgica v. Thyseen Steel Caribbean*, 114 D.P.R. 548, 14 Official Translation at 730. That these acts meet the "minimum contacts" test as purposeful acts on the part of the defendant, for which he should reasonably have foreseen that he would be subject to the jurisdiction of this Court, is equally clear. Difficult to fathom is how Kim's actions in Puerto Rico could be *more* purposeful, systematic or continuous during the period of time in which Kim is alleged to have been negotiating for car franchises on plaintiff's behalf.

Defendants rely heavily on two cases, *Dalmau Rodriguez v. Hughes Aircraft, Co.*, 781 F.2d 9 (1st Cir.1986) and *Young v. Pannell Fitzpatrick*, 641 F.Supp. 581 (D.P.R.1986). In *Dalmau*, however, the Court held that "[a]ll the purposeful activities [in Puerto Rico] were initiated and carried on by [another company]," and not by the defendant, Hughes Aircraft. 781 F.2d at 15. In this case, *Kim himself* made the trips to Puerto Rico and sent the telexes, all of which relate to the plaintiff's cause of action.[2] Similarly, *Young* involved a plaintiff's attempt to assert jurisdiction

---

**2.** Moreover, *Dalmau* involved the scope of the tort liability of a manufacturer when its product, having been dropped into the "stream of commerce," causes an injury. *See Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (a recent Supreme Court case involving personal jurisdiction over a non-resident manufacturer).

Nothing of the sort is at issue here. Instead we have a defendant who frequently exercised "the privilege of conducting activities" here in Puerto Rico, *International Shoe,* 66 S.Ct. at 160, and who therefore fits well within the first prong of Rule 4.7 by "transacting business in Puerto Rico personally."

over Pannell Fitzpatrick, a non-resident defendant, on the basis of the contacts a *client* of Pannell Fitzpatrick had established within Puerto Rico. There was no evidence in that case that Pannell Fitzpatrick had advertised or otherwise solicited business in Puerto Rico. 641 F.Supp. at 586. Here, the evidence that Kim solicited business in Puerto Rico is overwhelming.

■ A somewhat closer issue, certainly in comparison to the issue of this Court's personal jurisdiction over Kim, is this Court's jurisdiction over codefendant Helen Kim. In opposition to Kim's allegations that his wife visited Puerto Rico only once, for a short vacation, and that she never transacted business with the plaintiff, plaintiff has alleged that that one visit was in fact a business trip in which Helen Kim joined in her husband's efforts to be the plaintiff's agent in securing automobile franchises. *See* Estrada's affidavit, para. 7. The documentary evidence presented indicates that that visit was indeed business related. For example, the plaintiff paid for the Kims' stay at the Caribe Hilton in San Juan, Puerto Rico. *See* Exhibit 1. Estrada also alleges that he discussed the ongoing business with Helen Kim by telephone on numerous occasions. *Id.*, para. 24. There is other evidence indicating that Helen Kim was an active participant in her husband's venture. Plaintiff has submitted a copy of a telex from Kim in which he requests that plaintiff send the $500,000 check to Helen Kim for her to deposit in the company account. *See* Exhibit 39. Another telex, sent by Kim to Estrada in Puerto Rico, states that "[Mrs. Kim] helping me many ways for our Kia business." *See* Exhibit 40. Mrs. Kim herself sent a telex to Estrada in Puerto Rico acknowledging receipt of a fax from Estrada and agreeing to send it to her husband, defendant Kim. *See* Exhibit 22.

In light of what we now know of Kim's contacts with Puerto Rico, and that Mrs. Kim was involved in the venture, we find that Mrs. Kim's contacts with Puerto Rico—the visit and the telex—are sufficient for this Court to exercise personal jurisdiction over her. These contacts are among those that give rise to plaintiff's cause of action, and meet the "minimum contacts" test.

## II. MOTION FOR CHANGE OF VENUE

■ Finally, defendants move pursuant to 28 U.S.C. § 1404 for a change of venue to federal district court in New Jersey, which is the defendants' place of residence. 28 U.S.C. § 1404 provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The defendants have the burden to show that the factors enumerated in Section 1404 predominate in favor of a transfer. *Crosfield Hastech, Inc. v. Harris Corp.*, 672 F.Supp. 580, 589 (D.N.H.1987). "Factors to be considered by the district court in making its determination include the convenience of parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation." *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987). Only the first and the third factor are relevant here, and both are in favor of plaintiff. Defendants allege that three witnesses, namely, themselves and a Mr. Edward Narvez, all reside in New Jersey, and that Estrada, plaintiff's president, would be less burdened by pursuing this action in New Jersey than they will be defending it here in Puerto Rico. Plaintiff responds by alleging that at least seven witnesses with relevant knowledge of the facts underlying the cause of action reside in Puerto Rico, and that the documentary evidence is located here as well. When applying the doctrine of forum non conveniens before Section 1404 was enacted, the Supreme Court stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In this action, the balance does not even tilt in favor of

the defendants. This action shall therefore remain here.

### III. MOTION FOR RULE 11 SANCTIONS

■ Finally, plaintiff has filed a motion for sanctions under Fed.R.Civ.P. 11 for defendants' filing of a motion to dismiss for lack of personal jurisdiction. Plaintiffs allege that defendants have deliberately failed to inform the Court of their repeated and systematic transaction of business in Puerto Rico, and have therefore forced plaintiff to incur significant costs in preparing an opposition to their motion to dismiss.

Rule 11 provides, in relevant part, that if an attorney files a "pleading, motion, or other paper" without a belief

> formed after reasonable inquiry [that] it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... the court ... shall impose [upon the attorney, the client, or both] ... an appropriate sanction.

Defendants' motion to dismiss relied exclusively on Kim's affidavit, in which he swore, under oath, that he had "only been to the Commonwealth of Puerto Rico on two or three occasions at the specific request of the plaintiff." That declaration is false. *See* discussion, *supra,* of plaintiff's documentation of *seven* visits Kim made to Puerto Rico in the course of a year. Because defendants' counsel submitted no other evidence to support the motion to dismiss other than Kim's affidavit, and because that evidence, in its most relevant aspect, i.e., as to Kim's visits to Puerto Rico, was false, we find that defendants' motion to dismiss was *not* well grounded in fact.

■ Defendants' attorneys can still escape sanction under Rule 11, however, if we determine that "to the best of [the attorneys] knowledge, information, and be-

lief formed after reasonable inquiry it is well grounded in fact." Looking first at defendants' motion to dismiss and the memorandum of law, we note that defendants' counsel actually argued *more* than Kim's affidavit allowed them to argue,[3] even assuming that the attorneys were entitled to believe that Kim's assertions in his affidavit were true, and thus did *not* act "to the best of [their] ... information."

First, the defendants' memorandum of law unequivocally states that Kim had been to Puerto Rico on *two* occasions, not the "two or three" that Kim had admitted to, and gives the reasons for the visits, one for a personal family vacation, and one to discuss matters with plaintiff's representatives, reasons Kim does not supply in his affidavit. Memorandum at 2. The memorandum also gives time periods for those visits as "no longer than a few days," and "a brief two-day trip," details Kim does not mention in his affidavit. *Id.* Second, defendants' counsel states, no less than six times, not simply that defendants did not conduct any business in Puerto Rico, as Kim asserts in his affidavit, but that defendants also did not *solicit* or *transact* business, nor avail themselves of the privilege of conducting activities in Puerto Rico. These additional assertions are not supported by Kim's affidavit. We submit, for the purposes of a "minimum contacts" analysis, that a defendant's motion becomes stronger when he can allege, not only that he did not "conduct any business" in the forum state, but that he also did not "transact" business, "solicit business," or "avail himself of the privilege of conducting activities" there. Defendants' counsel took the liberty, without evidentiary support, of alleging the latter, a liberty we find that attorneys, conducting litigation "to the best of [their] knowledge," cannot take. Third, defendants' counsel asserts that plaintiff's complaint alleges that the "use of wire communications to fax *a* letter" (emphasis added), were the "business transactions" "which could remotely serve to link defendant to Puerto Rico." Motion

---

**3.** Defendants' motion to dismiss was signed by local counsel, Carolyn Boren, while the memo-  randum of law was signed by New Jersey counsel, Stephen Dratch.

to Dismiss at 9. The inference is that defendant used the wire communications once, to fax *a single letter*. Kim's affidavit, however, says nothing as to his use of wire communications. In its complaint, plaintiff mentions four different instances of the use of wire communications, and in its opposition, plaintiff demonstrated at least 18 different instances of defendants's use of wire communications to send messages to Puerto Rico.

Attorneys have an affirmative duty to make a "reasonable inquiry" before they sign a motion that is filed with the Court. In the opposition to the motion for sanctions, defendants' attorney essentially admits that this inquiry was not made. For one, she mentions repeatedly that she is "local counsel" in this case, apparently to give a partial explanation as to why she did not have the information on her clients' contacts—who are residents of New Jersey—in Puerto Rico. We first note that defendants' had New Jersey counsel over two months before the motion to dismiss was filed, and that this New Jersey counsel signed the memorandum of law in support of the motion to dismiss. We also note that defendants' counsel chose the time to file the motion to dismiss; they were not compelled to do so at all, or at the time they did so. Defendants' counsel also alleges that plaintiff's failure to participate in discovery is to blame for the lack of information on the part of defense counsel. Again, we reiterate that defendants' counsel chose to file the motion to dismiss when they did; if discovery from plaintiff was considered essential, defendants' counsel should have pursued that discovery *before* filing the motion to dismiss. Ironic, too, is defendants' counsel's assertion that she could not get information from plaintiff while at the same time admitting that she experienced difficulty getting information from her *own* clients.

Defendants' counsel also allege that they cannot be held responsible for their client being unworthy of belief. *See Oliveri v.*

*Thompson,* 803 F.2d 1265, 1277–78 (2nd Cir.1986). We are aware that imposing sanctions on an attorney because of a client's mendacity may cause an attorney to feel compelled to become an adversary to his client. Distasteful as the reality may be, we acknowledge that protecting the values inherent in the attorney-client relationship sometimes comes at the cost of the truth-seeking process of litigation. There are limits, however, on the price that will be paid:

> Too often a lawyer loses sight of his primary responsibility as an officer of the court. While he must provide "zealous advocacy" for his client's cause, we encourage this only as a means of achieving the court's ultimate goal, which is finding the truth. Deceptions, misrepresentations, or falsities can only frustrate that goal and will not be tolerated within our judicial system. *See Wagner v. Williford,* 804 F.2d 1012, 1017 (7th Cir.1986) (duty to client cannot override duty to respect system of justice); *Steinle v. Warren,* 765 F.2d 95, 101 (7th Cir.1985) (as "officer of the court ... [lawyer's] duty to the court is paramount, even to the interests of his client").

*Polansky v. CNA Insurance Co.,* 852 F.2d 626, 632–33 (1st Cir.1988). In this instance, as discussed above, defendants' counsel went way over the "budget" Rule 11 is designed to set. Even conceding their right to rely completely on the truth of Kim's assertions, they went beyond what Kim's affidavit allowed them to argue in their motion and memorandum.[4] Moreover, the attorney's role in the preparation of a motion such as the one at issue here cannot be underestimated. The attorney is the one who must explain to the client the legal basis for such a motion, and what facts are necessary to support it. The attorney is the one who structures a client's affidavit in support of a motion.

Defendants' counsel rightly argues that the attorney's conduct must be judged as of the time the motion is signed. Fed.R. Civ.P. 11 Advisory Committee Note. Noth-

---

4. We also acknowledge that we must be cautious not to chill an attorney's creativity in advancing legal and factual theories, or in arguing for the extension, modification, or reversal of existing law. Defendants' counsel makes no claim that the motion to dismiss was in any way directed at these exemplary ends, nor do we find it to be so.

ing has changed since the filing of that motion to dismiss based on the defendants' lack of contacts, however, *except* plaintiff's well-documented exposition of those contacts. Here, then, we question whether, on an objective standard, *see Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–5 (1st Cir.1988), defendants' counsel did make a "reasonable inquiry" as to defendants' contacts in this forum, before filing the motion. Defendants' counsel cannot have it both ways—they cannot argue in their memorandum of law that "the facts are clear," *see* Memorandum at 2, and then, in the opposition to a motion for sanctions, argue that they did not have all the facts, for an assortment of reasons. "Rule 11 sanctions are mandatory when an attorney fails to make reasonable efforts to ensure that the pleading he signs is grounded in fact." *Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir.1988).

Defendants' counsel makes other arguments in the opposition to the motion for sanctions. They allege that the "threshold issue" is that plaintiff initiated contact with defendant, and that the first meeting between the parties took place in New Jersey. These allegations are irrelevant; the appropriate focus on a motion to dismiss for lack of in personam jurisdiction is *the defendant's contacts with the forum.* That the plaintiff initiated contact, or that the first contact was not in the forum state, does not necessarily have significance in a finding of "minimum contacts." Defendants' counsel also allege that Kim never held himself out as a Kia representative, and that plaintiff suggested making Kim "vice-chairman" of plaintiff's company. Again, these allegations are irrelevant on a motion to dismiss for lack of minimum contacts. The motion in opposition to sanctions also alludes to the illegal nature of the contract between plaintiff and the defendants, but does not, understandably, explain how this allegation, even if true, caused the attorneys to file a motion to dismiss for lack of minimum contacts.

We therefore find that a sanction under Rule 11 is appropriate at this time. We have allowed the parties to brief the issue. This sanction, addressed solely to the motion to dismiss, and which has now been opposed by plaintiff, and decided by this Court, is however, also an attempt to redirect this litigation to its primary issues. We note that this action, still in its early stages, has been fraught with discovery battles and complaints of the attorneys on each side not notifying the other with filings. *See, e.g.*, docket entries numbered 8A, 9A, 10, 11, 24, 33, 37. "Misconduct, once tolerated, will breed more misconduct and those who might seek relief against abuse will instead resort to it in self-defense." Schwarzer, *Sanctions Under the New Federal Rule 11–A Closer Look*, 104 F.R.D. 181, 205.

The sanction shall be plaintiff's attorney's expenses, including a reasonable attorney's fee, incurred in opposing the motion to dismiss. Plaintiff's attorney shall submit a verified fee petition to the Court for approval, detailing the time spent and other expenses incurred in opposing defendants' motion to dismiss. Defendants' counsel, Carolyn Boren and Stephen Dratch, shall each pay 25% of the approved amount, and defendant Kim shall pay the remaining 50%.

WHEREFORE, defendants' motion to dismiss or to transfer is hereby DENIED. Plaintiff's motion for Rule 11 sanctions is hereby GRANTED.

IT IS SO ORDERED.