MANUEL RIEGO ZÚÑIGA, demandante y recurrente, *v.* LÍNEAS AÉREAS COSTARRICENSES SOCIEDAD ANÓNIMA (LACSA), demandada y recurrida.

*Número:* RE-93-226 *Resuelto:* 14 de noviembre de 1995

510

*Carlos J. Morales Bauzá*, abogado de la parte recurrente; *Orlando Fernández García*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante un recurso de revisión, comparece ante nos Manuel Riego Zúñiga y solicita la revisión de la sentencia emitida por el Tribunal Superior, Sala de San Juan (Hon. María M. Pérez de Chaar, Juez), que desestimó la acción de daños incoada por éste por falta de jurisdicción sobre la persona. Revocamos.

## I

A mediados de 1990, el recurrente Riego Zúñiga compró en San Juan un boleto para transporte aéreo a la compañía recurrida, Líneas Aéreas Costarricenses, Sociedad Anónima (en adelante LACSA) para viajar de San Juan a San Pedro Sula, Honduras. El vuelo hacía escala en San José, Costa Rica.

Mientras aguardaba en el aeropuerto de San José para subir a bordo del avión hacia San Pedro Sula, Riego fue objeto de amenazas, insultos e intimidaciones por parte de un empleado de LACSA. Según consta en las determinaciones de hecho del tribunal de instancia, dicha conducta tuvo como motivo el hecho de que el empleado quería que Riego pagara una cantidad de dinero adicional para cubrir un alegado exceso de equipaje, cosa que este último se negó a hacer. A pesar de que Riego trató de convencer al empleado de que LACSA no tenía derecho alguno a reclamarle el pago de ese dinero, puesto que no lo solicitó de primera intención cuando subió a bordo del avión en Puerto Rico, éste último insistió en requerirle el dinero y acudió a la oficina de inmigración del aeropuerto para solicitar el arresto de Riego.

Como resultado, Riego fue detenido por las autoridades de inmigración del aeropuerto y llevado a donde un oficial quien, luego de escuchar a ambas partes, lo dejó ir en vista de que entendía que las autoridades de inmigración no eran agencias de cobro de LACSA. No obstante ello, el empleado de LACSA continuó desplegando la misma conducta

vengativa hacia Riego, al punto que le indicó que no le iba a dejar que subiera a bordo del avión hacia San Pedro Sula. Finalmente, en un último intento por detenerlo, el empleado trajo un policía y lo instó a detener a Riego cuando éste se disponía a subir a bordo de su avión. Al igual que antes, tan pronto como el policía escuchó la versión de ambas partes, dejó en libertad a Riego.

Oportunamente, Riego presentó una acción de daños y perjuicios contra LACSA, en la cual alegó que las actuaciones del empleado de LACSA constituían una violación al contrato entre la línea aérea y el pasajero, y que, además, daban fundamento a la responsabilidad extracontractual al amparo de los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142. LACSA fue emplazada a través de su representante autorizado en Puerto Rico.

Por su parte, LACSA presentó una moción de desestimación en la cual alegó, en esencia, que los tribunales de Puerto Rico no tenían jurisdicción *in personam* sobre LACSA. Riego se opuso a dicha moción sobre la base de que estaban presentes los requisitos de contactos mínimos expuestos en *A.H. Thomas, Co. v. Tribunal Superior*, 98 D.P.R. 883 (1970), puesto que LACSA realizaba negocios significativos en Puerto Rico; mantenía un itinerario de vuelos fijo desde el Aeropuerto Internacional Luis Muñoz Marín y tenía oficinas y empleados dentro y fuera de dicho aeropuerto para vender y mercadear su producto. Además, alegó que había un nexo entre las actividades de LACSA en Puerto Rico y el daño causado debido a la relación contractual existente entre la línea aérea y el pasajero, por lo que no se violaban las doctrinas de "trato imparcial" y "justicia sustancial" al ventilar el caso en Puerto Rico.

El tribunal de instancia desestimó la acción al concluir que, si bien no cabía duda de que LACSA realizaba negocios significativos en Puerto Rico, faltaba el requisito de "que la reclamación surg[iera] de las transacciones que propiamente realiza la demandada en Puerto Rico". Apén-

dice, pág. 8. Inconforme, Riego recurre ante nos y alega que dicho tribunal erró al determinar que la reclamación del demandante no había surgido de las transacciones que realiza LACSA en Puerto Rico y al concluir que, por lo tanto, no existía jurisdicción *in personam* sobre ésta. Por entender que existe jurisdicción *in personam* sobre LACSA y los mecanismos apropiados para el emplazamiento de corporaciones extranjeras autorizadas para hacer negocios en Puerto Rico, revocamos.

## II

A. En reiteradas ocasiones hemos señalado la importancia de que se satisfagan las exigencias del debido proceso de ley para el ejercicio de la jurisdicción *in personam* sobre las partes. *Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15 (1993). Este principio tiene una particular pertinencia en el caso de personas, naturales o jurídicas, que residan fuera de Puerto Rico. El debido proceso de ley limita el ejercicio de nuestra jurisdicción en estos casos. *Ind. Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548, 558–559 (1983). Este tipo de controversia requiere de una atención especial en vista de que "[l]a función judicial de los tribunales como parte del ejercicio del poder soberano del Estado se circunscribe generalmente a personas presentes o bienes ubicados dentro de los límites territoriales del Estado". *Medina v. Tribunal Superior*, 104 D.P.R. 346, 348 (1975).[1]

---

[1] Véase, al respecto, M.A. Velázquez Rivera, *Jurisdicción y competencia de los tribunales de Puerto Rico*, 48 Rev. Jur. U.P.R. 27, 52 (1979).

La autoridad judicial, descrita arriba, ha sido denominada por comentaristas estadounidenses como "jurisdicción general". A.T. von Mehren y D.T. Trauten, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121 (1966). Un tribunal puede atender una controversia aun cuando ésta no se relacione con la presencia o los contactos del demandado en el foro donde se presente la demanda. Esto es, que los tribunales locales pueden atender un caso donde se demande a un residente de Puerto Rico por hechos acontecidos fuera del país. Es su presencia aquí lo que nos otorga la autoridad. La "jurisdicción general" contrasta con la "jurisdicción específica", según la cual la autoridad judicial descansa en que la controversia surge o está

■ Como norma general, un tribunal no posee jurisdicción sobre un no residente. Sin embargo, existen excepciones a esta norma; entre éstas se encuentra el caso de cuando haya habido sumisión o consentimiento expreso o tácito de la persona a la jurisdicción del foro. *Sterzinger v. Ramírez*, 116 D.P.R. 762, 789 (1985).

■ De estar ausente una sumisión o un consentimiento, el debido proceso de ley también permite el ejercicio de la jurisdicción sobre un no residente si se cumple con los requisitos de contactos mínimos entre el demandado y el foro local. Véanse: *A.H. Thomas, Co. v. Tribunal Superior*, supra, donde expusimos la norma según adoptada en *Internat. Shoe Co. v. Washington*, 326 U.S. 310 (1945).

■ B. Para asegurar la existencia de la jurisdicción *in personam*, el debido proceso de ley requiere que todo demandado en un pleito civil sea notificado adecuadamente de la demanda en su contra, a través del procedimiento de emplazamiento establecido por ley. Regla 4 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Arts. 301 y 1404 de la Ley General de Corporaciones, 14 L.P.R.A. secs. 1301 y 2404; *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986); *Mundo v. Fúster*, 87 D.P.R. 363 (1963). Dicho procedimiento varía dependiendo, entre otras cosas, de si el demandado reside o no en Puerto Rico o si se trata de una persona natural o jurídica.

■ Cuando la parte demandada es una corporación doméstica, el emplazamiento se diligencia mediante su entrega personal, junto con la demanda, a un oficial, agente administrativo o agente general autorizado para recibir emplazamientos. Regla 4.4(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Hach Co. v. Pure Water Systems, Inc.*, 114 D.P.R. 58 (1983). Véase, además, el Art. 301 de la Ley Ge-

---

vinculada a los contactos del demandado con el foro local. Esta distinción fue acogida por el Tribunal Supremo federal en *Helicópteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984).

neral de Corporaciones, *supra*. Como en estos casos las probabilidades de que el demandado pueda comparecer y defenderse adecuadamente son altísimas, el único requisito con que tiene que cumplir el demandante, para obtener jurisdicción sobre el demandado, es demostrar que el demandado fue emplazado personalmente a través de una persona autorizada.([2])

■ En el caso de una corporación extranjera, la adjudicación por nuestros tribunales requiere que se atiendan las circunstancias según las cuales sea posible ejercer jurisdicción *in personam*: la presencia de la persona o su consentimiento y la existencia de contactos mínimos. Véase, en general, *Peguero y otros v. Hernández Pellot*, 139 D.P.R. 487 (1995).

■ Nuestras leyes proveen dos (2) procedimientos por los cuales puede ser emplazada una corporación extranjera demandada. La utilización de uno u otro dependerá de si la corporación está o no autorizada para hacer negocios en Puerto Rico de acuerdo con la Ley General de Corporaciones. Veamos.

■ En el caso de las corporaciones que no hayan cumplido con los requisitos de la Ley General de Corporaciones, se trata de un demandado no residente y el emplazamiento puede hacerse al amparo de nuestro estatuto general de largo alcance, Regla 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, siempre y cuando se cumplan los requisitos de contactos mínimos. Hemos establecido que, para que exista jurisdicción *in personam* sobre este tipo de corporación, el debido proceso de ley exige el cumplimiento de dos (2) requisitos: (1) que haya contactos mínimos entre el foro y la corporación demandada y que la causa de acción

---

([2]) Si la persona se encuentra fuera de Puerto Rico, o estando aquí no pudiera ser localizada, se oculte o sea una corporación extranjera sin agente residente, deberá ser emplazada mediante un edicto. Regla 4.5 de Procedimiento Civil, según enmendada por la Ley Núm. 196 de 12 de agosto de 1995 (32 L.P.R.A. Ap. III).

surja o esté relacionada con estos contactos, y (2) que el método utilizado para emplazarla tenga una probabilidad razonable de notificar e informar a la corporación sobre la acción en su contra, para que ésta tenga oportunidad de defenderse adecuadamente. *Pou v. American Motors Corp.*, 127 D.P.R. 810 (1991). El emplazamiento se diligencia, en tal caso, conforme a la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III (emplazamiento mediante edicto).

De otro lado, cuando la corporación demandada es extranjera pero está autorizada para hacer negocios en Puerto Rico según el Art. 1401 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 2401, el emplazamiento se hace por medio de un agente residente designado por la corporación, Art. 1404 de la Ley General de Corporaciones, *supra*,[3] o según lo dispone la Regla 4.4(e) de Procedimiento Civil, *supra*.

Al igual que en la mayoría de las jurisdicciones estatales norteamericanas, Puerto Rico regula la admisión de corporaciones extranjeras con interés en hacer negocios en la isla. Nuestra Ley General de Corporaciones impone requisitos tales como la presentación de una copia certificada de su carta constitutiva o su certificado de incorporación en el Departamento de Estado y la conservación de expedientes corporativos con información relacionada a la contabilidad de la corporación, además de documentos que reflejen el estado de las inversiones, la propiedad y el capital empleado por la corporación en su negocio en Puerto Rico. Entre las condiciones para recibir la autorización se destaca la designación por la corporación de un agente residente en Puerto Rico, persona que por disposición de ley está autorizada para recibir emplazamientos, órdenes judi-

---

[3] En adelante nos referiremos a la Ley General de Corporaciones vigente al momento de los hechos, la Ley Núm. 3 de 9 de enero de 1956, según enmendada, 14 L.P.R.A. sec. 1101 *et seq.* Recientemente, se adoptó la Ley General de Corporaciones de 1995, Ley Núm. 144 de 10 de agosto de 1995 (14 L.P.R.A. sec. 2601 *et seq.*).

ciales y toda regla o notificación que deba hacerse o entregarse a la corporación.

 La corporación extranjera que quiera hacer negocios en el país deberá seguir estas reglas. Por este medio se asegura la regulación de entes jurídicos de otras jurisdicciones en relación con sus actividades dentro de Puerto Rico, actividades que por su potencial impacto fiscal, entre otros, poseen interés para nuestro Gobierno.(4) El incumplimiento con los requisitos puede conllevar la revocación de la autorización y la imposición de penalidades. 14 L.P.R.A. secs. 423 y 2406. Véase Op. Sec. Just. Núm. 1973-19.

 En *Pou v. American Motors Corp.*, supra, tuvimos la oportunidad de examinar a grandes rasgos la naturaleza de los requisitos que la Ley General de Corporaciones impone a las corporaciones extranjeras para hacer negocios aquí. Dijimos allí:

> El estado puede imponer requisitos que deben cumplir las corporaciones foráneas que interesan ser admitidas a hacer negocios en el mismo. El propósito de estos requisitos o condiciones, de cuyo cumplimiento depende el que puedan *"hacer negocios"* en dicha jurisdicción, es colocar a las corporaciones foráneas en la misma posición en que se encuentran las corporaciones domésticas. De este modo estarán sujetas a ser inspeccionadas de forma tal que se conozcan las condiciones bajo las cuales operan. El estado puede además, proveer a sus residentes mecanismos relativamente sencillos para emplazar a dichas corporaciones foráneas. *Fletcher Cyc. Corp.* Sec. 8446 (Perm. Ed.). (Énfasis suplido.) *Pou v. American Motors Corp.*, supra, págs. 825–826.

 Al momento de determinar el poder de los tribunales locales sobre las corporaciones extranjeras autorizadas para hacer negocios, estos objetivos guardan una especial relevancia. En virtud de solicitar la autorización que

---

(4) *Cf.* L.M. Negrón Portillo, *Derecho Corporativo Puertorriqueño*, [s. l., s. ed.], 1995, pág. 343.

dispone la Ley General de Corporaciones para registrarse y designar a un agente residente, la corporación extranjera se somete expresamente a nuestra jurisdicción.(5) *Pou v. American Motors Corp.*, supra.

La designación, por una corporación extranjera, de un agente para recibir emplazamientos es indicativa de un consentimiento para ser demandada en los tribunales de Puerto Rico. Esta norma está predicada en la teoría del consentimiento. El tratadista Fletcher lo expone del siguiente modo: las corporaciones extranjeras que hayan cumplido con los estatutos que regulan la realización de negocios en un estado estarán, por definición, presentes en ese estado y típicamente habrán designado a un agente residente para recibir emplazamientos; por lo tanto, la presencia de éstas en un foro podrá interpretarse como un consentimiento al ejercicio de la jurisdicción por parte de los tribunales de ese estado. 18 *Fletcher Cyc. Corp.* Sec. 8637.10, págs. 76–77 (1991). Esta postura ha sido acogida con aprobación por varios tribunales federales en decisiones en las cuales estaba en juego la interpretación de leyes estatales que exigen una autorización para hacer negocios a las corporaciones extranjeras. En tal sentido, véanse: *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1396 (8vo Cir. 1993); *General Contracting & Trading v. Interpole, Inc.*, 940 F.2d 20 (1er Cir. 1991); *Ytuarte v. Gruner + Jahr Printing and Pub. Co.*, 935 F.2d 971 (8vo Cir. 1991); *Knowlton*

---

(5) *Cf.* J.J. Santa-Pinter, *Corporaciones Foráneas en Puerto Rico*, XXXIX (Núm. 96) *Revista de Derecho Mercantil* 351 (1965): "hay ciertas jurisdicciones que establecen todo régimen para que la corporación foránea sea admitida para hacer negocios en el estado respectivo, con todas las consecuencias legales."

Las disposiciones relacionadas a este asunto contenidas en la Ley General de Corporaciones de 1995 no son incompatibles con la normativa descrita anteriormente. De acuerdo con el Art. 13.12(a) de dicho estatuto, "[e]l agente residente de una corporación foránea autorizada a hacer negocios en el Estado Libre Asociado será el agente de la corporación para fines de cualquier emplazamiento a la corporación foránea o entrega a tal corporación de toda orden, notificación o reclamación requerida o permitida por ley". 14 L.P.R.A. sec. 3172(a). En la parte (B) del artículo se proveen otros métodos para emplazar a las corporaciones foráneas.

*v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8vo Cir. 1990); *Cowan v. Ford Motor Co.*, 694 F.2d 104 (5to Cir. 1982).

Según esta jurisprudencia, cuando una corporación extranjera está autorizada para hacer negocios en un estado se le considera presente en éste, por lo que no es necesario que el demandante demuestre que existe un nexo causal entre las actividades que realiza la corporación en ese estado y el daño sufrido. En un caso en que una corporación que hacía negocios en un estado, bajo la ley de corporaciones de dicho foro, alegó falta de jurisdicción *in personam* por falta del nexo causal antes aludido, el tribunal estatal dispuso que su contención "rayaba en lo frívolo", puesto que "[e]stá establecido que una corporación extranjera, que voluntariamente se registre en [un estado] para hacer negocios, estará sujeta a ser procesada por los tribunales de [ese estado], sin importar la naturaleza de la acción ni su alegada falta de 'nexo' con las actividades realizadas por la corporación con [ese estado]". (Traducción nuestra.) *Ranger Nationwide, Inc. v. Cook*, 519 So.2d 1087, 1088 (1988). Véase, además, *Rose's Stores, Inc. v. Cherry*, 526 So.2d 749 (1988). Otros estados han dado al asunto un tratamiento idéntico. *Rykoff-Sexton, Inc. v. American Appraisal*, 469 N.W.2d 88 (1991); *Sternberg v. O'Neil*, 550 A.2d 1105 (1988).

 Valga aclarar que tampoco se trata de que toda autorización para hacer negocios y para la designación de un agente residente confiera una jurisdicción *in personam* a los tribunales del estado. El alcance en términos jurisdiccionales, que pueda tener el susodicho requerimiento estatutario para designar un agente residente, es un asunto que compete a cada estado interpretar de acuerdo con sus leyes. Esta es la postura adoptada en el *Restatement (Second) of Conflicts* Sec. 44 (1971), y los comentarios que la acompañan. A modo de ejemplo, véanse: *Ytuarte v. Gruner + Jahr Printing and Pub. Co.*, supra, en el cual se sigue la interpretación del Tribunal Supremo de Minnesota; *White*

*v. Pepsico, Inc.*, 866 F.2d 1325 (11mo Cir. 1989), en que la corte federal certificó el asunto del alcance de un estatuto de Florida al Tribunal Supremo de ese estado.

Existen algunas decisiones, sin embargo, que cuestionan que el registro y la designación de un agente residente, sin más, pueda otorgar jurisdicción sobre una corporación extranjera. Tal posición descansa en que todo caso, que suponga el ejercicio de una jurisdicción *in personam* sobre un no residente, debe ser examinado a la luz de la doctrina de los contactos mínimos. En su defecto, la teoría del consentimiento, en la medida que no explora la relación entre las actividades de la corporación extranjera en el estado con la reclamación presentada, no satisface el debido proceso de ley. En tal sentido, véanse lo decidido en: *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5to Cir. 1992); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4to Cir. 1971); *Follete v. Clairol, Inc.*, 829 F.Supp. 840 (W.D. La. 1993); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882 (S.D. Tex. 1993); *Riordan v. W.J. Bremer, Inc.*, 466 F. Supp. 411 (D. Ga. 1979).

Estos casos sostienen que desde *Internat. Shoe Co. v. Washington,* supra, todo intento de ejercer jurisdicción sobre un no residente, incluyendo una corporación, debe cumplir con el requisito de contactos mínimos y que la teoría del consentimiento no satisface este requisito constitucional. Esta posición, sin embargo, no reconoce una distinción entre dos (2) tipos de consentimiento: el expreso y el implícito. En *Medina v. Tribunal Superior,* supra, abordamos el tema del consentimiento implícito y su relación con el ejercicio de la jurisdicción *in personam* sobre corporaciones.

El encierro de la jurisdicción en moldes tan restrictivos hizo necesaria la elaboración de otros enfoques [además de la teoría de la presencia física] para atender la ficción corporativa. Surgió así la teoría del consentimiento. Como la corporación extranjera no podía hacer negocios en otras jurisdicciones sin la autorización del Estado, éste podía imponer como condición

para ello que la corporación consintiera a ser demandada y que designara un agente para recibir emplazamientos dentro de la jurisdicción. *The Lafayette Insurance Co. v. French*, 59 U.S. 404 (1855). Si la corporación extranjera no cumplía con este requisito se asumía que había consentido implícitamente a ser demandada. *Simon v. Southern Railway*, 236 U.S. 115 (1915). El mero hecho de hacer negocios dentro de la jurisdicción constituía consentimiento implícito. *Connecticut Mutual Life Insurance Co. v. Spratley*, 172 U.S. 602 (1898). Para una discusión de este interesante tema puede verse *Development in the Law: State-Court Jurisdiction*, 73 Harv.L.Rev. 909.

La teoría del consentimiento implícito se extendió más tarde a la conducción de vehículos de motor dentro de la jurisdicción por personas no residentes. [Citas omitidas.]

En Puerto Rico incorporamos la teoría del consentimiento en la Ley Núm. 433 del 14 de mayo de 1951, 32 L.P.R.A. sec. 463, requiriendo de las corporaciones extranjeras que dieran expresamente su consentimiento irrevocable a ser demandadas ante los tribunales de Puerto Rico y autorizar al Superintendente de Seguro para recibir emplazamientos a nombre de ellas. *Medina v. Tribunal Superior*, supra, págs. 350–351.

Las expresiones anteriores se circunscriben al papel jugado por la teoría del consentimiento implícito dentro del desarrollo del tema de la jurisdicción *in personam* sobre corporaciones no residentes. A la luz de *Internat. Shoe Co. v. Washington*, supra, el consentimiento implícito representa una etapa primitiva del desarrollo hacia la teoría de los contactos mínimos. Es así como llegamos a *Ind. Sidedúrgica v. Thyssen Steel Caribbean*, supra, pág. 561, donde dijimos que, en cuanto a las corporaciones extranjeras, las "teorías de la 'presencia física' primero, y del 'consentimiento' después, ... llegaron a su ocaso en *Internat. Shoe Co.*".

Es menester, pues, distinguir la obsolescencia del consentimiento implícito, del consentimiento expreso que supone solicitar una autorización para hacer negocios según nuestra Ley General de Corporaciones. En tal caso, la corporación extranjera se somete a la jurisdicción de los tribunales locales. Según un análisis similar a éste, la Corte Suprema de Delaware determinó que, en el caso de las

corporaciones extranjeras, el consentimiento expreso es un fundamento válido para el ejercicio de jurisdicción, aun en la ausencia de contactos mínimos. *Sternberg v. O'Neil*, supra, págs. 1109–1113.([6])

 Según esta tesis, el ejercicio de la jurisdicción *in personam* sobre una corporación autorizada para hacer negocios aquí descansa en el consentimiento voluntario del ente corporativo y no ofende, por lo tanto, el debido proceso de ley.([7])

Finalmente, aunque es cierto que el Tribunal Supremo federal no ha pasado juicio sobre un caso en que se impugne la teoría del consentimiento según aquí aplicada a una corporación extranjera autorizada a hacer negocios en un estado, en varias ocasiones ha hecho expresiones que parecen avalar el ejercicio de la jurisdicción *in personam* sobre este tipo de demandado.

En *Penna. Fire Ins. Co. v. Gold Issue Mining Co.*, 243 U.S. 93, 96 (1917), el Juez Holmes concluyó lo siguiente respecto a la designación de un agente residente:

---

([6]) *Sternberg v. O'Neil*, 550 A.2d 1105, 1115 (1988):

"The Delaware statutory scheme with respect to foreign corporations is consistent with the distinction we have found between a state court's power to exercise general jurisdiction over a corporation based upon express consent and its ability to exercise jurisdiction over a foreign corporation as a result of implied consent." Véase, además, E.F. Scoles y P. Hay, *Conflict of Laws*, 2da ed., St. Paul, Ed. West Publishing Co., 1992, Sec. 9.5, págs. 331-332:

"Although the theories of implied consent are no longer considered to be an appropiate rationalization for exercising jurisdiction, actual consent given by a foreign corporation continues to be effective to confer jurisdiction over it as it does over an individual. ... Consent to jurisdiction may also be given by designating an agent for the service of process within the forum. ... Effective designation of an agent for a service of process may also be accomplished by the affirmative designation under a statute by which a corporation is licensed or by which it qualifies to do business in the forum." (Escolios omitidos.)

([7]) Hace algún tiempo expusimos un criterio similar al expresar en sentido negativo que:

"Sería contrario a la cláusula constitucional que garantiza un debido proceso de ley el dictar una sentencia contra una corporación organizada bajo las leyes de otro estado, cuando esa corporación no efectúa negocios en la jurisdicción donde se impone la sentencia, o no tiene bienes en esa jurisdicción *o no tiene allí un agente debidamente autorizado a quien se pueda emplazar y notificar la demanda.*" (Énfasis suplido.) *Schwartz v. Tribl. de Distrito*, 73 D.P.R. 856, 863 (1952).

... cuando se ha conferido un poder a través de un documento, la parte que lo otorga asume el riesgo de la interpretación que las cortes le den. El otorgamiento fue un acto voluntario del demandado. (Traducción nuestra.)

Más recientemente, al resolver *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888 (1988), el Tribunal Supremo federal asumió, sin discutir el asunto, que la existencia de la jurisdicción general, fundamentada en la designación de un agente residente, es constitucional.(8)

Veamos, a la luz de lo dispuesto anteriormente, cuál es el derecho aplicable al caso de marras.

## III

Al adjudicar la controversia originada por la compra del boleto para transporte aéreo en Puerto Rico, tomamos conocimiento judicial, según nos lo permite nuestra Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, de que LACSA es una corporación extranjera autorizada para hacer negocios en Puerto Rico según dispone el Art. 1404 de nuestra Ley General de Corporaciones, *supra*.(9)

Considerando los hechos particulares de este caso, al solicitar y obtener permiso del Estado para hacer negocios en este foro, conforme al Art. 1404 antes mencionado, LACSA consintió a ser demandada en los tribunales de Puerto Rico.

---

(8) Adviértase que, incluso un comentarista quien sostiene la inconstitucionalidad del ejercicio de jurisdicción por medio de la teoría del consentimiento, coincide en que la premisa bajo la cual se resuelve *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888 (1988), es más que un mero *dictum*. D. Craig Lewis, *Jurisdiction over Foreign Corporations Based on Registration and Appointment of an Agent: An Unconstitutional Condition Perpetuated*, 15 Del. J. Corp. L. 1 (1990).

(9) Ello consta en el archivo Núm. 7417-F del Departamento de Estado de Puerto Rico. El tribunal de instancia determinó que LACSA era una corporación que realizaba transacciones de negocios en Puerto Rico. Resulta pertinente recalcar que, para efectos de la jurisdicción *in personam*, no es lo mismo realizar transacciones de negocios según la Regla 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que hacer negocios en Puerto Rico bajo la Ley General de Corporaciones. Véase *Pou v. American Motors Corp.*, 127 D.P.R. 810 (1991).

Por los fundamentos que anteceden, *procede que se revoque la sentencia recurrida y se devuelva el caso al Tribunal de Primera Instancia, Sala Superior, para la continuación de los procedimientos.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita.