# 2006 DTA 111

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**
**PANEL XI**

DR. ROBERT A. HALVORSEN, JR. ANNE SNELL HALVORSEN
Recurridos

v.

BHT S.E., *ET AL.*
Peticionarios

Núm. KLCE-06-00971

San Juan, Puerto Rico, a 31 de agosto de 2006

Panel sustituto integrado por su Presidente, el Juez Brau Ramírez, el Juez Colón Birriel y la Juez Pabón Charneco

Brau Ramírez, Juez Ponente

■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■

## TEXTO COMPLETO DE LA SENTENCIA

### I

Se trata de una demanda en cobro de dinero y ejecución de hipoteca presentada ante el Tribunal de Primera Instancia, Sala Superior de Carolina, relacionada con la siguiente propiedad inmueble:

*"RÚSTICA: Parcela de Terreno radicada en el Barrio Zarzal del Término Municipal de Río Grande, Puerto Rico, compuesta de dos punto cero ocho cuerdas, equivalentes a ocho mil ciento sesentiuno punto cuatro metros; colindante por el Norte en ciento veintiocho punto cuarenta y tres metros lineales con terrenos propiedad de Norman Halvorsen, por el Sur, en cincuenta y seis punto ochenta metros lineales con terreno de Norman Halvorsen, por el Oeste en noventinueve punto cincuenta metros lineales con terrenos de Norman Halvorsen, por el Este, con noventiuno punto noventa y cuatro metros lineales con terrenos de Norman Halvorsen."*

Inicialmente, el terreno era propiedad de los esposos recurridos Norman Halvorsen y Anne Snell Halvorsen. El 8 de diciembre de 1989, los recurridos vendieron la propiedad a la entidad peticionaria, BHT, S.E. (*"BHT"*), mediante la Escritura Núm. 48 otorgada en San Juan ante el Notario Antonio Marichal Aponte.

BHT es una sociedad especial constituida bajo las leyes de Puerto Rico, dedicada a la adquisición y desarrollo de propiedades inmuebles. Fue constituida mediante la Escritura Núm. 18 otorgada en San Juan el 21 de octubre de 1988 ante el Notario Pedro Hernández Reyes. La sociedad fue organizada por el recurrido Norman Halvorsen, el peticionario Manuel Guillermety, Héctor Nevares y Carmen Nevares.

Conforme a la mencionada Escritura de Constitución de Sociedad Especial, se dispuso que la dirección y oficina principal de BHT estaría ubicada en la Avenida de Diego, Esquina San Patricio, La Riviera, Río Piedras y que Héctor Nevares sería su agente para fines de notificación, en dicha dirección. ■

La Escritura de Constitución de Sociedad también dispuso que el socio administrador de BHT lo sería la corporación BHT, Inc.

BHT, Inc. es una corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, dedicada, entre otras cosas, al desarrollo de propiedades inmuebles. Para la fecha de los hechos, el peticionario Manuel Guillermety era el presidente y dueño de BHT, Inc.

Conforme a sus artículos de incorporación, la dirección de BHT, Inc. era la misma que la de BHT, a saber, Avenida de Diego, Esquina San Patricio, La Riviera, Río Piedras. Según los artículos de incorporación de BHT, Inc., el agente residente de la corporación lo era el Lcdo. Antonio Marichal, cuya dirección también queda en San Juan, Edificio Banco Central Suite 1515, Hato Rey, Puerto Rico, 00917. La dirección postal de BHT, Inc. es GPO Box 3207, San Juan, P.R. 00936.

Por su parte, el Sr. Guillermety residía en la Calle Octavio Marcano #537, Urbanización Roosevelt en Hato Rey. ■

Cuando BHT compró la propiedad de los recurridos en diciembre de 1989, el inmueble estaba sujeto a una hipoteca para garantizar catorce pagarés al portador emitidos por los esposos Halvorsen, por la suma de $30,000.00 cada uno. Los recurridos tenían la posesión de dichos pagarés. Al adquirir la propiedad, BHT y el peticionario Guillermety se comprometieron a pagar esta deuda.

Los peticionarios, sin embargo, incumplieron dicha obligación.

En mayo de 1992, los recurridos instaron la presente acción sobre cobro de dinero y ejecución de hipoteca contra BHT; BHT, Inc. y el Sr. Guillermety solicitando el pago de la deuda y la ejecución del inmueble.

BHT; BHT, Inc. y el peticionario Guillermety fueron emplazados a través de este último en su oficina ubicada en la Carretera Núm. 1, km. 18.1, Río Piedras, P.R.

Los peticionarios comparecieron mediante su abogado ■ y contestaron la demanda, negando las alegaciones. Presentaron, además, una reconvención por daños y perjuicios contra los recurridos. Los peticionarios alegaron que los recurridos habían obrado de mala fe al reclamar el pago de la deuda en ese momento. Alegaron que esta actuación había interrumpido los planes del desarrollo del predio, lo que había provocado pérdidas a los peticionarios.

Luego de otros trámites, el 30 de julio de 1994, el Tribunal de Primera Instancia emitió sentencia parcial y declaró con lugar la demanda contra BHT y el peticionario Guillermety. El Tribunal condenó a dichas partes a pagar solidariamente a los recurridos la cantidad de la deuda, la que el Tribunal determinó en ese momento ascendía a $427,000.00.

El Tribunal desestimó la demanda contra BHT, Inc., concluyendo que la participación de dicha parte en la transacción sólo había sido como administradora de BHT y a nombre de ésta. Quedó pendiente la adjudicación de la reconvención presentada por las partes demandadas.

La sentencia parcial emitida por el Tribunal advino final y firme.

Poco después, el 29 de septiembre de 1994, el Tribunal de Primera Instancia emitió sentencia final en el caso y desestimó la reconvención de los peticionarios. Este dictamen también advino final y firme.

Los recurridos solicitaron la ejecución de la sentencia a su favor. El 15 de junio de 1995, el Tribunal emitió una orden de ejecución, disponiendo que se vendiera la propiedad en pública subasta. Dicha orden fue notificada a los peticionarios a través de su abogado.

Compareciendo a través de un abogado diferente, ■ BHT presentó una solicitud de quiebras ante el Tribunal Federal. En su solicitud, BHT expresó que su dirección lo era PO Box 19746, Fernández Juncos Sta., San Juan P.R. 00910.

Para esa fecha, según la declaración del Sr. Guillermety, BHT no estaba funcionando y no mantenía cuentas bancarias. BHT, Inc. también se hallaba inactiva.

Ante la solicitud de quiebras de BHT, el Tribunal de Primera Instancia ordenó la paralización de los procedimientos.

Oportunamente, a solicitud de los recurridos, el Tribunal de Quiebras emitió una orden relevándolos de la paralización de los procedimientos. El 9 de mayo de 1996, el Tribunal de Primera Instancia notificó a las partes de la reapertura y continuación de los procedimientos.

Descansando en la orden previamente emitida por el Tribunal el año antes, el 15 de junio de 1995, los recurridos procedieron a solicitar al Alguacil del Tribunal que señalara una subasta. El 6 de junio de 1996, el Alguacil de la Sala Superior de Carolina expidió el edicto de subasta. No se envió una notificación del edicto a los peticionarios.

La primera subasta se celebró el 11 de julio de 1995. La misma se declaró desierta. El Alguacil procedió a señalar una segunda subasta para el 18 de julio de 1996. Al igual que en la primera ocasión, los recurridos no enviaron una notificación del edicto a los peticionarios.

Los recurridos contaban con varias direcciones conocidas de BHT y el Sr. Guillermety, así como de los abogados de dichas partes. Todas estas direcciones correspondían a San Juan. No obstante lo anterior, los recurridos no publicaron copia del edicto de la subasta en colecturía ni escuela pública alguna de dicho municipio, según lo requería la Regla 51.8 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 51.8.

Los recurridos no hicieron gestión alguna para notificar a los peticionarios de la subasta en el lugar de su residencia. En su lugar, gestionaron la publicación del edicto en un periódico de circulación general por dos semanas consecutivas, según lo contemplaba la Regla 51.8, 32 L.P.R.A. Ap. III, R. 51.8.

El edicto fue publicado en varios lugares de Río Grande, donde estaba ubicada la propiedad, y de Carolina, en donde se había adjudicado la controversia. ■

El 18 de julio de 1996, el Alguacil celebró la segunda subasta. Los recurridos fueron los únicos licitadores. Se adjudicaron la buena pro por la suma de $308,000.00, cantidad sustancialmente inferior a la cuantía de la sentencia.

El 13 de abril de 2005, los peticionarios presentaron una moción de nulidad de subasta y venta judicial. Alegaron que la ejecución del inmueble había sido nula porque los recurridos no les habían notificado de la subasta para brindarles la oportunidad de ellos comparecer a defender su interés en la propiedad.

Los recurridos se opusieron a la moción de los peticionarios. Alegaron que a la fecha de los hechos, BHT estaba inactiva y, por lo tanto, carecía de un lugar de residencia adonde pudiera cursársele una notificación.

Mediante resolución emitida el 6 de junio de 2005, el Tribunal de Primera Instancia denegó la moción de los peticionarios. La determinación del Tribunal de Primera Instancia fue tomada sin celebrar una vista.

La resolución del Tribunal de Primera Instancia fue revocada por este Tribunal, mediante sentencia emitida el 28 de octubre de 2005 en los recursos consolidados KLCE-2005-00749 y KLCE-2005-00990. En esa ocasión, se devolvió el asunto al Tribunal de Primera Instancia para que procediera a celebrar una vista evidenciaria en torno a la contención de la parte recurrida de que, a la fecha de la subasta, BHT carecía de una dirección.

El Tribunal celebró la vista correspondiente el 15 de junio de 2006. Ambas partes presentaron evidencia en apoyo a sus respectivas posiciones. En particular, se presentó una declaración bajo juramento del peticionario Sr. Guillermety a los efectos de que él se dedicaba a negocios de bienes raíces y que mantenía oficinas en las diferentes localidades en las que estuviera envuelto en algún proyecto.

A base de la prueba desfilada y mediante resolución emitida en corte abierta, el Tribunal de Primera Instancia nuevamente declaró sin lugar la moción de nulidad de subasta presentada por los peticionarios.

En su resolución, el Tribunal de Primera Instancia concluyó que las gestiones realizadas por los recurridos habían sido suficientes para notificar a los peticionarios de la subasta.

El Tribunal expresó:

*"Si bien es cierto que a BHT, S.E. la emplazaron en esta demanda en una de las varias direcciones que se me ha informado en el día de hoy, también es cierto que el señor Guillermety ha declarado bajo juramento que, aunque su oficina era en San Juan realmente BHT, S.E. tenía las oficinas dependiendo de donde él estaba, lo podían conseguir en cualquiera de esos lugares.*

*También me llama la atención que en los documentos que se sometieron con la Oposición a la solicitud de nulidad, que es una deposición bajo juramento, declara claramente el señor Guilermety que para el 1993, ya BHT, S.E. no tenía negocios, cuentas bancarias, no estaba funcionando como tal y no estaba llevando a cabo hacía año y medio las transacciones comerciales. Es decir, que era muy difícil concluir, a los efectos de la publicación de la subasta y del edicto, si en efecto BHT, S.E. estaba funcionando con una dirección o cuál de las direcciones era. Realmente era muy fácil concluir que no tenía una dirección específica:*

*1. Porque había varias direcciones.*

*2. Para esa fecha no estaba funcionando BHT, S.E.*

*3. De los documentos que también me sometieron, tampoco existía dirección, ni siquiera que hubiésemos podido examinar para la corporación que hubiese sido la administradora, porque esa corporación no estaba funcionando como tal y no podíamos tampoco utilizar esa dirección."*

En ausencia de conocimiento oficial hubiese sido casi llegando a lo absurdo que [los recurridos] hubiesen tenido que publicar el edicto en todas estas diferentes direcciones.

El Tribunal estimó que, ante la situación, los recurridos razonablemente venían obligados a *"hacer lo que hicieron, asumir que realmente no conocían la dirección de BHT, S.E., porque no estaba establecida en esa dirección y porque no estaba en ese momento esa dirección disponible y porque BHT, S.E. no estaba funcionando en ese momento..."*.

El Tribunal denegó la moción de los peticionarios. Insatisfechos, éstos acudieron ante este Tribunal.

Los recurridos han comparecido en oposición al recurso.

Procedemos a resolver.

## II

En su recurso, los peticionarios alegan que el Tribunal de Primera Instancia erró al denegar su moción de nulidad de subasta.

La norma es que el demandado en una acción de ejecución de hipoteca tiene un derecho a ser notificado de la subasta del inmueble. *R & G v. Sustache*, 163 D.P.R. ___ (2004), **2004 J.T.S. 203**, a la pág. 523; *Lincoln Savs. Bank v. Figueroa*, 124 D.P.R. 388, 391 (1989); *C.R.U.V. v. Registrador,* 117 D.P.R. 662, 665-666 (1986).

Se trata de un *"requisito fundamental íntimamente ligado al debido proceso de ley." Lincoln Savs. Bank v. Figueroa,* 124 D.P.R. a la pág. 391; véase, además, *R & G v. Sustache,* **2004 J.T.S. 203**, a la pág. 523.

Debe recordarse que el mero pronunciamiento de sentencia en contra de un deudor hipotecario no tiene el efecto de privarle de su título sobre el inmueble objeto de la controversia. En estos casos, el deudor tiene derecho a ser notificado de la ejecución de manera que pueda asistir a la subasta y defender ante otros licitadores su interés en la propiedad. ■

Desde el punto de vista constitucional, la notificación debe estar razonablemente calculada, a la luz de las circunstancias del caso, para permitir al dueño conocer de la subasta y ejercitar sus derechos, que es el estándar que se emplea en situaciones análogas. Véase, *R & G v. Sustache,* **2004 J.T.S. 203**, a la pág. 526; véanse, además, *Rivera v. Jaume,* 157 D.P.R. ___ (2002), **2002 J.T.S. 107**, a las págs. 1,522-23; *Granados v. Rodríguez Estrada II,* 124 D.P.R. 593, 610-611 (1989); *Rodríguez v. Nasrallah,* 118 D.P.R. 93, 100-102 (1986); *Jones v. Flowers,* 547 U.S. ___ (2006); *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314 (1950).

El Art. 149 de la Ley Hipotecaria dispone, en torno a este particular, en lo pertinente:

*"En los casos de ejecución de hipoteca, los que hayan inscrito o anotado su derecho con posterioridad a la hipoteca y con anterioridad a la anotación de demanda, deberán ser citados para la subasta conforme a lo dispuesto en la legislación procesal vigente para el caso de los demandados, sin lo cual no podrá ordenar el tribunal la cancelación de estos asientos.*

*El titular demandado que haya comparecido a juicio ... deberá ser citado para la subasta por medio de sus abogados."*

30 L.P.R.A. sec. 2473.

Al presente, la Regla 51.8 de las de Procedimiento Civil también requiere expresamente que el promovente de la ejecución notifique al demandado vía correo certificado con acuse de recibo, si hubiera comparecido o, en caso contrario, que se le notifique de la misma manera a su *"última dirección conocida".* 32 L.P.R.A. Ap. III, R. 51.8 (Supl. 2005); *R & G v. Sustache,* **2004 J.T.S. 203**, a la pág. 523. ■

A la fecha de los hechos, sin embargo, la Regla 51.8 no requería el envío de una notificación por correo certificado al demandado. Véanse, *Albaladejo v. Vilella Suau,* 106 D.P.R. 331, 337 (1977); *Avilés Vega v. Torres,* 97 D.P.R. 144, 147-151 (1969).

Al momento de la subasta realizada en el presente caso, la Regla establecía que se notificara al demandado de la subasta mediante la publicación del edicto en la colecturía y en la escuela pública del lugar de la residencia del demandado, cuando ésta fuera conocida o, su defecto, en un diario de circulación general en el Estado Libre Asociado de Puerto Rico por dos semanas, 32 L.P.R.A. Ap. III, R. 51.8.

La consecuencia de no ofrecer un aviso suficiente de la subasta al titular de la propiedad es la nulidad de la venta judicial que se realice. *Lincoln Savs. Bank v. Figueroa,* 124 D.P.R. a la pág. 388; cf., *Dapena Quiñones v. Vda. del Valle,* 109 D.P.R. 138, 140-141 (1979); véase, además, *R & G v. Sustache,* **2004 J.T.S. 203**, a la pág. 524; véase la Regla 51.8 de las de Procedimiento Civil *("[s]erá nula toda venta judicial que se realice sin dar cumplimiento al aviso de venta judicial en la forma indicada, sin perjuicio de la responsabilidad de la parte que promoviere la venta sin cumplir con tal aviso"),* 32 L.P.R.A. Ap. III, R. 51.8 (Supl. 2005). ■

En la situación de autos, según hemos visto, la parte recurrida no cursó notificación alguna a los peticionarios en su lugar de residencia. Los recurridos tampoco notificaron de la subasta a ninguno de los

abogados de los recurridos, según lo exige el Art. 149 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2473, a pesar de que conocían la dirección del abogado que los representaba en el litigio de autos y del letrado que lo hacía ante el Tribunal de Quiebras.

Los recurridos conocían la dirección oficial y el nombre del agente de BHT. También conocían la dirección postal de dicha entidad. BHT y BHT, Inc. fueron ambas emplazadas en la oficina del Sr. Guillermety en Río Piedras. No obstante, los recurridos no hicieron gestión para notificar individualmente a dicha parte a alguna de estas direcciones.

**Todas** las direcciones antes mencionadas correspondían al Municipio de San Juan. No obstante, aunque los recurridos publicaron su edicto en distintos lugares de Carolina y Río Grande, no hicieron gestión alguna para notificar de la subasta a los peticionarios en dicho municipio. En su lugar, optaron por notificar de la subasta a los peticionarios mediante la publicación del edicto en el periódico.

En su resolución, según hemos visto, el Tribunal de Primera Instancia concluyó que los recurridos no venían obligados a notificar de la subasta a BHT en su lugar de residencia porque dicha entidad no estaba haciendo negocios y porque tenía "*varias direcciones*".

No vemos cómo el hecho de que BHT estuviese inactiva podía haber afectado el cumplimiento del requisito de notificación en cuanto al peticionario Guillermety, quien es un individuo. Dicho peticionario fue condenado junto con BHT al pago solidario de la deuda y tenía un interés en comparecer a la subasta y verificar que la propiedad fuese vendida en un precio que resultase justo. No obstante, al igual que en el caso de BHT, los recurridos no realizaron gestión alguna para notificarle de la subasta.

El Tribunal entendió que, como el peticionario conducía sus negocios desde varias direcciones, los recurridos no venían obligados a notificarle de la subasta en **ninguna**. No podemos estar de acuerdo con dicho razonamiento.

El peticionario tenía un lugar de residencia, el cual podía ser determinado por los recurridos. El peticionario había comparecido al Tribunal de Primera Instancia y al Tribunal de Quiebras a través de abogado, por lo que los recurridos no carecían de medios para verificar su dirección.

El requisito, de dimensión constitucional, es que el promovente de la subasta realice gestiones razonablemente calculadas para que la notificación sea recibida por el dueño de la propiedad. En este caso, los recurridos conocían que todas las direcciones asociadas a BHT y al peticionario Guillermety estaban localizadas en San Juan. No obstante, omitieron hacer gestión alguna para publicar su edicto en algún lugar de dicho municipio.

Cabe señalar que, aunque no era requerido, los recurridos publicaron el edicto de la subasta en la alcaldía, el correo y el tribunal, tanto de Carolina como de Río Grande. No obstante, omitieron hacer una gestión análoga en San Juan, que era el lugar de residencia de los peticionarios.

Los recurridos publicaron su edicto en el periódico. Este método de notificación, según se conoce, es el menos efectivo y usualmente sólo se utiliza cuando se carece de una dirección específica. *Marrero et al. v. Vázquez et al.*, 135 D.P.R. 174, 179 (1993); véase, *Mullane v. Central Hanover Bank & Trust Co*, 339 U.S. a la pág. 315 (*"It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed..."*).

Al presente, según señalado, nuestro ordenamiento expresamente requiere que el promovente de la subasta notifique al titular mediante correo certificado. Aunque, a la fecha en que se llevó a cabo la subasta, los recurridos no venían obligados a efectuar este tipo de notificación, sí venían obligados a realizar gestiones razonablemente calculadas para que los peticionarios fuesen notificados de la venta.

La Regla 51.8 expresamente requería a los recurridos publicar la notificación en la colecturía y la escuela del lugar de residencia de los demandados. Los recurridos no cumplieron con este requisito, a pesar de que, según hemos indicado, todas las direcciones conocidas de BHT y del peticionario Guillermety al momento de la subasta estaban ubicadas en San Juan.

Los recurridos han intentado justificar su omisión alegando que al momento de la subasta, BHT no estaba haciendo negocios.

La norma es que las personas jurídicas que hacen negocios en nuestra jurisdicción de ordinario vienen obligadas a registrar su dirección y a mantener un agente individual. El propósito de este requisito es precisamente que se les pueda cursar cualquier notificación en un proceso judicial. *Quiñones Román v. Compañía ABC*, 152 D.P.R. 367, 375 (2000); *Riego Zúñiga v. Líneas Aéreas LACSA*, 139 D.P.R. 509, 517 (1995); *Hach Co. v. Pure Water Systems*, 114 D.P.R. 58, 63 (1983) *("tratándose de una corporación, no era necesario hacer ninguna investigación en la comunidad, pues, como tal, tenía la obligación, bajo la Ley de Corporaciones, de informar en el Departamento de Estado la dirección y el nombre de su agente residente");* véase, además, 14 L.P.R.A. secs. 3126, 3174.

BHT no es, como tal, una corporación sino una sociedad especial, autorizada por nuestro ordenamiento, 13 L.P.R.A. secs. 8630 y ss. No obstante, entendemos que, en las circunstancias del caso de autos, los principios expresados deben serle aplicados por analogía.

En efecto, en el presente caso, al constituirse BHT, las partes convinieron asignar a dicha entidad una dirección específica en San Juan y designar un agente para que actuara a nombre de la empresa. El recurrido Norman Halvorsen fue uno de los suscribientes de la Escritura de Constitución de la sociedad, por lo que no puede alegar desconocimiento de lo anterior.

La parte recurrida conocía la dirección oficial de BHT y podía haber tomado medidas para notificar a dicha entidad de la subasta de la manera requerida por la Regla 51.8. A pesar de que no estaba conduciendo negocios, los recurridos también tenían conocimiento de que BHT había comparecido ante el Tribunal federal de Quiebras y había ofrecido una dirección postal. La misma, al igual que constaba en la Escritura de Constitución de la Sociedad, estaba ubicada en San Juan.

No se trata de que los recurridos hubieran tenido una duda razonable sobre cuál era la escuela o colecturía más cercana al lugar de residencia de los demandados, o de que hubieran optado por tratar de notificarles a otra dirección dentro del mismo municipio o empleando otro medio o agente. Los recurridos optaron por prescindir del todo de notificar a los peticionarios de la subasta en su lugar de residencia, según lo requería la Regla 51.8.

Teniendo varias otras opciones para verificar que los peticionarios fuesen razonablemente notificados de la celebración de la subasta, los recurridos escogieron aquella menos apropiada para tal fin. Su omisión no le permitió a los peticionarios comparecer a la venta para proteger su interés en la propiedad.

En estas circunstancias, entendemos que la subasta debe ser anulada.

Por los fundamentos expresados, se expide el auto y se revoca la resolución recurrida. En su lugar, se declara con lugar la moción de nulidad de subasta presentada por los peticionarios. Se devolverá el caso al

Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 111

**1.** La parte recurrida alega que la dirección en cuestión correspondía a Carmen Nevares, quien posteriormente se retiró de la sociedad.

**2.** Actualmente reside en La Urbanización Villas de Paraná en Río Piedras.

**3.** La dirección de éste era Bolivia 33, Tercer Piso, Oficina 301, Hato Rey, Puerto Rico 00917.

**4.** La dirección de éste era Olimpo Plaza Suite 208, Muñoz Rivera 1002, Río Piedras P.R. 00927.

**5.** Según se desprende del expediente, el edicto de la subasta fue colocado en el tablón de edictos de los tribunales de Río Grande y Carolina, así como en las colecturías, correos y alcaldías de ambos municipios.

**6.** Observamos que, por ejemplo, el Tribunal Supremo de Puerto Rico ha resuelto que, a pesar de no ser los titulares ni partes indispensables, los acreedores hipotecarios del dueño de una propiedad expropiada tienen derecho a ser notificados del proceso, a fin de que puedan comparecer a defender sus intereses frente a éste. *A.C.T. v. Iñesta,* 166 D.P.R. ___ (2005), **2005 J.T.S. 155**, a las págs. 340-342; *A.C.T. v. 780.6141,* 165 D.P.R. ___ (2005), **2005 J.T.S. 97**, a las págs. 1,442-4. En estos casos, según se conoce, la expropiación tiene el efecto de extinguir la garantía de la deuda.

**7.** Este requisito fue incorporado mediante la Ley Núm. 172 de 12 de agosto de 2000, luego de los hechos de este caso, véase, 32 L.P.R.A. Ap. III, R. 51.8, nota de historial.

**8.** La 51.8 Regla también dispone que *"[e]n todos los casos en que se plantee que la parte promovente de un procedimiento de ejecución de sentencia no ha cumplido con alguno de los requisitos de esta regla, el tribunal, a solicitud de [la] parte, celebrará una vista para resolver la controversia planteada".* 32 L.P.R.A. Ap. III, R. 51.8 (Supl. 2005).